Rocky Lee HILL, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–98–278–CR.

Court of Appeals of Texas,
Waco.

Oct. 13, 1999.

William T. Hughey, Law Offices of William T. Hughey, Corsicana, for appellant.

Patrick C. Batchelor, Crim. Dist. Atty., Lyndon Laird, Asst. Dist. Atty., Corsicana, for appellee.

Before Chief Justice DAVIS, Justice VANCE and Justice GRAY.

## OPINION

REX D. DAVIS, Chief Justice.

The trial court convicted Rocky Lee Hill in a bench trial of indecency with a child. *See* TEX. PEN.CODE ANN. § 21.11(a) (Vernon 1994). The court sentenced him to sixteen years' imprisonment. Hill claims in four issues that: (1) the evidence

is legally and factually insufficient to support his conviction (2 points); (2) the court reporter improperly included the child-victim's nonverbal responses to questioning in the reporter's record; and (3) the court erred by failing to examine the victim to ascertain her competence to testify. We will affirm.

## BACKGROUND

The indictment alleges in pertinent part that Hill committed the offense "by touching the genitals of [A.A.], a child younger than 17 years of age and not the spouse of the defendant." A.A. was ten-years-old at the time of the offense and eleven at trial. The court permitted A.A.'s mother to stand with her during her testimony. The critical portion of A.A's testimony follows:

PROSECUTOR: Okay. After he kissed on you, would you tell the Court whether or not he did anything else with his hands?

A.A.: (No response.)

PROSECUTOR: [A.], you're going to have to answer one way or the other. Did Rocky Hill do anything with his hands?

A.A.: Yes.

PROSECUTOR: Okay. What—did he put his hands—would you state whether or not he put his hands on your body?

A.A.: Yes.

PROSECUTOR: Did he place his hands on your private parts?

A.A.: Yes.

PROSECUTOR: Now, when we talk about "private parts" we're using not the scientific name, you understand that?

A.A.: (The witness nods.)

PROSECUTOR: Now, when we talk about "private parts" and you say that he put his hands on them, are you talking about your chest area or your area down below where you go to the bathroom?

A.A.: (The witness nods.)

PROSECUTOR: Which one? Where your chest is?

A.A.: (The witness holds up two fingers.)

PROSECUTOR: Where you go to the bathroom? You're signaling number 2; is that right?

A.A.: (The witness nods.)

The State called its second and final witness Marcy McCarter to provide outcry testimony. McCarter testified that A.A. told her on the date in question "that someone had sexually molested her." The State later asked McCarter whether A.A. named the person who had molested her. Hill objected because the question sought a hearsay response and because the State had not given him the notice required by article 38.072, section 2(b)(1) of the Code of Criminal Procedure for outcry testimony. *See* TEX.CODE CRIM. PROC. ANN. art. 38.072, § 2(b)(1) (Vernon Supp.1999). The State withdrew McCarter and rested before the court could rule on Hill's objection. Hill did not ask the court to strike McCarter's prior testimony.

In argument, Hill challenged the sufficiency of the evidence to prove venue in Navarro County or to prove the offense alleged because "a little child" "testified" only "that Rocky put his hand between her legs." He argued that A.A.'s testimony raised a question "that there was possibly some coaching going on."

The State responded that A.A. and McCarter "prior to her being excused" both testified that the offense occurred in Navarro County. The prosecutor concluded, "The only believable evidence that we have in this case is that little girl that sat up there crying and embarrassed because she was forced to come in here and have to testify to that. And she told you the truth."

Before finding Hill guilty, the court stated:

With respect to the child witness herself, I realize the child was somewhat

nonverbal, but the Court was in a position to appreciate her responses, both her verbal responses and her body language and head nods with respect to some of the questions that were asked.

With regard to her mother, who remained in the courtroom, the Court is not convinced that there was any sort of coaching. I had an opportunity to see any possible interplay between the mother and the child....

Based on the evidence, I find the Defendant guilty of the offense alleged in the indictment in this case.

## THE REPORTER'S RECORD

■ Hill contends in his third issue that the court reporter's inclusion of A.A.'s nonverbal responses during her testimony exceeds the parameters of appellate rule 34.6(a) which governs the content of the reporter's record. *See* TEX.R.APP. P. 34.6(a). He requests this Court to submit the record to the trial court "for corrections to ensure that the reporter's record is made to conform to what occurred in the trial court as to actual testimony given with the deletion of the nonverbal nods and hand signals referenced above." *Id.* 34.6(e)(3).

Rule 34.6(a)(1) provides in pertinent part that a stenographically-recorded reporter's record "consists of the court reporter's transcription of so much of the *proceedings*, and any of the exhibits, that the parties to the appeal designate." TEX. R.APP. P. 34.6(a)(1) (emphasis added). Rule 13.1(a) requires a court reporter to "make a full record of the *proceedings.*" *Id.* 13.1(a) (emphasis added). Rule 34.6(e)(3) permits this Court to submit a reporter's record to the trial court for correction when the parties dispute the accuracy of the record. *Id.* 34.6(e)(3).

The appellate rules do not define what is included within the term "proceedings." Hill believes that rule 34.6 is "designed to

capture testimony," presumably to the exclusion of any other matters which might transpire during a trial. He contends that A.A.'s nonverbal responses constitute "inaccuracies which should be removed for purposes of this Appeal."

■ When construing a procedural rule adopted by the Court of Criminal Appeals, we employ the ordinary tools of statutory construction. *See State v. Hardy,* 963 S.W.2d 516, 519 (Tex.Crim.App. 1997). We apply the plain meaning of the words contained in the rule unless such would lead to absurd results. *Id.*

Webster's Collegiate Dictionary defines "proceedings" to mean "events, happenings." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 929 (10th ed.1993). Thus, we construe the term "proceedings" to mean those "events" or "happenings" which occur during the course of a trial or other hearing. The term is not limited solely to the recording of verbalized "testimony" as suggested by Hill.

This definition is confirmed by experience. Court reporters frequently report nonverbal and nontestimonial events in the record. For example, court reporters routinely note when the jury is present in the courtroom and when proceedings are being conducted outside the presence of the jury or at the bench outside the jury's hearing. Similarly, reporters record the trial court's rulings, which are not evidence and do not constitute "testimony."

This definition finds further support in the Uniform Format Manual for Texas Court Reporters recently adopted by the Court of Criminal Appeals.[1] *See* Order Adopting the Uniform Format Manual for the [sic] Texas Court Reporters and Amending Court of Criminal Appeals Order Directing the Form of the Appellate Record in Criminal Cases, 62 Tex. B.J.

---

1. We expressly acknowledge however that the provisions of the Uniform Manual do not govern the form of the record in Hill's case because this record was prepared before the adoption of the Uniform Manual.

583–84 (Tex.Crim.App. Apr. 12, 1999).[2] Section 1.1(p) of the Uniform Manual defines "proceedings" to be "events or happenings in the courts, legislature, state agencies, depositions, grand juries, referees and court commissions." Uniform Format Manual for Texas Court Reporters § 1.1(p), 62 Tex. B.J. 584 (1999) (hereinafter, "Uniform Format Manual").

The Uniform Manual also contains provisions for reporting the nonverbal conduct of a witness. Section 16.11 provides in pertinent part:

It is the responsibility of the attorneys, as well as the judge in some instances, to note for the record any significant nonverbal behavior (*e.g.*, physical gestures and lengthy pauses on the part of a witness). If counsel or the court fail to refer to the witness's affirmative or negative gesture or other things occurring during the proceedings that may assist the reader, parenthetical notations may be used.

*Id.* § 16.11, 62 Tex. B.J. 591. Subsection (a) of section 16.11 provides several "recommended parenthetical notations" including: "(Moving head up and down)" and "(Moving head side to side)." *Id.* § 16.11(a). Section 16.15 provides:

    **16.15 Verbal and Nonverbal Expressions.** Expressions such as "Uh-huh" and "Huh-uh" should be transcribed accordingly. "Uh-huh" is used when the speaker is answering affirmatively. "Huh-uh" is used when the speaker is answering negatively. In the instance where there is no verbal response to a query (*i.e.*, person nodding or shaking head) the reporter/transcriber may indicate in the transcription that the person is indicating either affirmatively or negatively.

*Id.* § 16.15, 62 Tex. B.J. 592.

Our research has disclosed at least four cases in which the appellate court relied on a child-witness's "nods" when deciding the case. *See Rodriguez v. State,* 802 S.W.2d 716 (Tex.App.—San Antonio 1990), *reformed in part,* 819 S.W.2d 871 (Tex.Crim. App.1991); *Macias v. State,* 776 S.W.2d 255 (Tex.App.—San Antonio 1989, pet. ref'd); *Gonzales v. State,* 748 S.W.2d 510 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd); *Rhea v. State,* 705 S.W.2d 165 (Tex. App.—Texarkana 1985, pet. ref'd).

In *Rodriguez,* the court characterized the six-year-old's testimony thus:

The "testimony" of the complainant . . . shows she nodded her head affirmatively when asked, "Has anyone ever touched you in a bad way?" But when asked, "Who has touched you in a bad way?", she answered, *"I don't know."* Next was the inquiry, "When that someone touched you in a bad way, where did they touch you?" But the child refused to answer. When asked, "Can you tell me that person's name?", the child shook her head negatively.

*Rodriguez,* 802 S.W.2d at 724. The court found the evidence insufficient because the child-victim did not name, identify, or in any way acknowledge the defendant as the person who sexually assaulted her and because the outcry witness's testimony that the victim said the defendant had touched her with his "pee-pee" was inadmissible because of noncompliance with article 38.072 and because it did not qualify as an "excited utterance." *Rodriguez,* 802 S.W.2d at 722–24. Because the court found the evidence legally insufficient, it ordered an acquittal. *Id.* at 724.[3]

---

**2.** The Supreme Court has also adopted the Uniform Manual. *See* Order adopting the Uniform Format Manual for Texas Court Reporters and Amending Supreme Court Order Directing the Form of the Appellate Record in Civil Cases, Misc. Docket No. 99–9067, 62 Tex. B.J. 583 (Tex. Apr. 8, 1999).

**3.** The Court of Criminal Appeals reformed that portion of the lower court's judgment ordering an acquittal because the lower court failed to consider the improperly-admitted testimony in assessing the sufficiency of the evidence. *Rodriguez v. State,* 819 S.W.2d 871, 873–74 (Tex.Crim.App.1991). Under the

The courts in *Macias, Gonzales,* and *Rhea* each reviewed a child-witness's testimony, including nonverbal "nods" noted in the record, to determine whether the trial court abused its discretion in finding the witness competent to testify. *See Macias,* 776 S.W.2d at 256–58; *Gonzales,* 748 S.W.2d at 511–12; *Rhea,* 705 S.W.2d at 167–70; Tex.R. Evid. 601(a)(2).

Because we conclude that A.A.'s nonverbal responses constitute a part of the "proceedings" in the court below, the court reporter properly included them in the record. *See* Tex.R.App. P. 13.1(a), 34.6(a)(1). Hill does not challenge the accuracy of the parenthetical references concerning A.A.'s nonverbal actions. Thus, submission of the record to the trial court for "correction" is unnecessary. *Id.* 34.6(e)(3). Accordingly, we overrule Hill's third issue.

### COMPETENCY

■ Hill asserts in his fourth issue that the court erred by failing to *sua sponte* examine A.A. to determine whether she was competent to testify because her nonverbal responses to some of the State's questions and her "I don't know" responses to some of Hill's questions "should have raised in the court's mind a question from the court as to the child witness being incompetent to testify." *See* Tex.R. Evid. 601(a)(2). However, rule 601(a)(2) does not require the trial court to conduct a competence evaluation *sua sponte*. *See Grayson v. State,* 786 S.W.2d 504, 505 (Tex.App.—Dallas 1990, no pet.); *accord Morgan v. State,* 403 S.W.2d 150, 152 (Tex. Crim.App.1966). Moreover, Hill never asked the court to evaluate A.A.'s competence to testify, nor did he object to her

competence. Thus, he has failed to preserve this issue for our review. *See Boudreaux v. State,* 878 S.W.2d 701, 705 n. 1 (Tex.App.—Beaumont 1994, no pet.); *Grayson,* 786 S.W.2d at 505; Tex.R.App. P. 33.1(a)(1). Accordingly, we overrule Hill's fourth issue.

### SUFFICIENCY OF EVIDENCE

■ Hill challenges the legal and factual sufficiency of the evidence in his first and second issues respectively to prove he "engaged in sexual contact with [A.A.] by touching [her] genitals."

In reviewing a claim of legal insufficiency, we view the evidence in a light most favorable to the verdict and determine whether any rational trier of fact could have found the essential element beyond a reasonable doubt. *Saxton v. State,* 804 S.W.2d 910, 914 (Tex.Crim.App.1991) (citing *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979)). We resolve any inconsistencies in the evidence in favor of the verdict. *Matson v. State,* 819 S.W.2d 839, 843 (Tex. Crim.App.1991).

When presented with a factual insufficiency claim, we discard the prism of the light most favorable to the verdict. *Clewis v. State,* 922 S.W.2d 126, 134 (Tex.Crim. App.1996). We reverse "only if [the verdict] is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Id.*

We consider all the evidence in the record related to the contested issue, "not just the evidence which supports the verdict." *Santellan v. State,* 939 S.W.2d 155, 164 (Tex.Crim.App.1997). We review the evidence tending to prove the issue, "and compare[ ] it to the evidence which tends

standards for legal sufficiency review, an appellate court must consider even improperly-admitted evidence in determining whether any rational trier of fact could have found the essential elements beyond a reasonable doubt. *Id.* at 873; *see also Nevarez v. State,* 832 S.W.2d 82, 88 (Tex.App.—Waco 1992, pet. ref'd). An acquittal is warranted only when the evidence both properly and improperly

admitted is so weak that no rational trier of fact could have convicted the accused. *See Rodriguez,* 819 S.W.2d at 874. The conviction may be reversed because of the improperly-admitted evidence, but no acquittal may be ordered because of this "trial error." *Macias v. State,* 776 S.W.2d 255, 259 (Tex.App.—San Antonio 1989, pet. ref'd).

to disprove that [issue]." *Id.* We give appropriate deference to the trier of fact's decision and do not substitute our judgment for its. *Cain v. State,* 958 S.W.2d 404, 407 (Tex.Crim.App.1997). We do not set aside the "verdict merely because [we] feel that a different result is more reasonable." *Clewis,* 922 S.W.2d at 135 (quoting *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 634 (Tex.1986)); *accord Cain,* 958 S.W.2d at 407.

Viewing the evidence in a light most favorable to the verdict, A.A. testified that Hill touched her in the place "where [she] go[es] to the bathroom." McCarter testified that A.A. told her "someone had sexually molested her." From this evidence, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Hill "engaged in sexual contact with [A.A.] by touching [her] genitals." *See Saxton,* 804 S.W.2d at 914. Accordingly, we overrule Hill's first issue.

The evidence recited above tends to support the court's verdict. The medical evidence is inconclusive on the question of whether the offense occurred. Hill argues that A.A.'s nonverbal responses are ambiguous and could be equally interpreted to be negative responses to the questions asked because the reporter's record does not indicate whether she nodded "affirmatively" or "negatively." *See, e.g., Macias,* 776 S.W.2d at 257; Uniform Format Manual, §§ 16.11, 16.15.

We agree that appellate review of a witness's nonverbal responses can be more readily accomplished if the court reporter indicates whether the witness is making an affirmative or negative response. *Id.* It appears in this case however that the court reporter did so by using the phrase "The witness nods" to indicate an affirmative response and the phrase "The witness shakes her head" to indicate a negative response.

In addition, the court stated on the record that it "was in a position to appreciate [A.A.'s] responses, both her verbal responses and her body language and head nods with respect to some of the questions that were asked." Based on this statement and the verdict, it appears that the court construed A.A.'s nods to the critical questions to be affirmative responses to those questions.

The trier of fact "is the exclusive judge of the facts proved, and of the weight to be given to the testimony." *Cain,* 958 S.W.2d at 407 n. 5 (quoting Tex.Code Crim. Proc. Ann. art. 38.04 (Vernon 1979)). When conducting a factual sufficiency review, we must defer to the trier of fact on issues relating to the credibility and weight of the testimony unless the verdict is "manifestly unjust." *Santellan,* 939 S.W.2d at 164–65. The interpretation to be assigned A.A.'s nonverbal responses is such an issue.

Giving appropriate deference to the trier of fact's evaluation of A.A.'s testimony and the facts proved by her testimony, we conclude the verdict is not "manifestly unjust." Accordingly, we overrule Hill's second issue.

We affirm the judgment.