11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Todd Snodgrass

Appellant

Vs.                   No. 11-02-00104-CR B Appeal
from Collin County

State of Texas

Appellee

 

The jury convicted
Todd Snodgrass of the aggravated sexual assault of a child.[1]  The trial court assessed his punishment at
confinement for 40 years.  We affirm.

                                                                   The
Indictment

The indictment
charged that, on or about October 9, 2000, appellant intentionally caused the
penetration (by appellant’s tongue and finger) of the female sexual organ of
A.H., a child younger than 14 years of age and not his spouse.  The indictment also charged that appellant
intentionally caused the penetration (by appellant’s male sexual organ) of the
child’s mouth.

                                                                   Points
of Error

Appellant presents
four points of error.  First, he argues
that the trial court erred in allowing a therapist to “testify as to the
credibility” of the child (Point of Error No. 1) and in “failing to make a
determination” that the child was competent to testify (Point of Error No. 2).  Appellant claims in Point of Error No. 3
that he was denied his “sixth amendment right to effective assistance of
counsel.”  Finally, he argues in Point
of Error No. 4 that the evidence was “factually insufficient” to support his
conviction.

                                                          The
Therapist’s Testimony








Shirley Diane Robbins testified that she was a
therapist, that she had a master’s degree in counseling and a doctorate in
psychology, that she had a specialty with children and adolescents, and that
A.H. was brought to her for therapy when the child was 11 years old.  Dr. Robbins was told that A.H. had some
learning disabilities, that she was in special education classes, and that the
family was having some problems with her. 
Dr. Robbins said that those problems were not unusual and that they
were  “pretty characteristic” of
children who have been abused or who have experienced some disruption in
parental care.  Dr. Robbins said that
A.H. told her that she had not reported the abuse to her mother because she was
afraid that her mother would not believe her because she had “told so many lies
in the past.”  

Dr. Robbins said
that she had A.H. work with a children’s activity book that helps children
“unfold their story as they go through the book,” that she could tell that A.H.
was uncomfortable, that A.H.’s demeanor changed as they started working with
the book, that A.H. became more subdued, that A.H.’s face would get very red,
that A.H. would put her head down, that her teeth would be clinched, and that
tears would come to her eyes.  Dr.
Robbins said that A.H. said that appellant would “touch her in places that he
shouldn’t be touching her” and that appellant would have her “rub his penis and
put his penis in her mouth.”  A.H. also
talked about the “yucky white stuff” that came out.  Dr. Robbins said that A.H. “talked about some details that most
children her age wouldn’t normally have been exposed to” and that she was
having nightmares.  Dr. Robbins said
that A.H. had posttraumatic stress syndrome. 
Other portions of the therapist’s testimony read as shown:

Q: Based upon your
[weekly visits with A.H. for almost a year], do you think she has the mental
capacity to make up something, a story and stick with it for a year and a half
and be consistent about that if she didn’t experience something herself?

 

[DEFENSE COUNSEL]:
Objection, Your Honor.  Again, that is
not an issue for this witness....Your Honor, I need to make another
objection.  This is not for expert
testimony.  This takes away the province
of the jury to make the determination about the - - 

 

THE COURT: Do you
offer this witness as an expert in this area of testimony?

 

[PROSECUTOR]: I’ve
offered her as both [fact witness and expert witness], but yes, she’s an
expert.

 

                                                           *    *   
*

 








THE COURT: I’m going to allow her
to testify as an expert.  Your objection
is overruled.

 

A: Yes, [A.H.] was given [an
intelligence] test at the beginning of this school year and the results of that
show that she is in the borderline range of intelligence.  And taking that into consideration as well
as immaturity, as well as her demeanor and the way she presented herself
throughout the sessions, I don’t think that she’s sophisticated enough to
have pulled together the number of characteristics that are very much a part of
Posttraumatic Stress Syndrome and to be able to be as convincing as she is on
each one of them throughout this course of time.  (Emphasis added)

 

The testimony from
the therapist which came in over appellant’s objection was admissible under
TEX.R.EVID. 703 (Bases of Opinion Testimony by Experts).  It showed the “facts or data...relied upon”
by an expert in making a diagnosis of the posttraumatic stress syndrome.[2]  See Osbourn v. State, 92 S.W.3d 531, 536-37
(Tex.Cr.App.2002), where the court said:

When a witness who is capable of
being qualified as an expert testifies regarding events which he or she
personally perceived, the evidence may be admissible as both Rule 701 opinion
testimony and Rule 702 expert testimony. 
A person with specialized knowledge may testify about his or her own
observations under Rule 701 and may also testify about the theories, facts and
data used in his or her area of expertise under Rule 702.  

 

                                                           *    *   
*

 

The admissibility of evidence is
within the discretion of the trial court and will not be reversed [unless there
is] an abuse of discretion. 

 

            We note
that Schutz v. State, 957 S.W.2d 52, 60 (Tex.Cr.App.1997) (Schutz I), discussed
the “fine but essential” line between helpful expert testimony and
“impermissible comments on credibility.” 
Other testimony from Dr. Robbins had already been admitted without
objection, and much of it is summarized above.   Even if the trial court erred in overruling the objection when
it was made, the jury had already heard most of the testimony from Dr.
Robbins.  See Schutz v. State, 63 S.W.3d
442, 444 (Tex.Cr.App.2001)(Schutz II), where the court said:








We have held that we will not overturn a criminal
conviction for non-constitutional error if the appellate court, after
examining the record as a whole, has fair assurance that the error did not
influence the jury, or influenced the jury only slightly.  (Emphasis in original)

 

We have made a “harm analysis”
pursuant to TEX.R.APP.P. 44.2(b).  From
our examination of the entire record, this court “has fair assurance” that the
claimed error did not influence the jury or that it influenced the jury only
slightly.  Point of Error No. 1 is
overruled.  

                                                                             Competency of
Child

Appellant argues in
his next point of error that the trial court erred in “failing to make a
determination that [A.H] was competent to testify.”  Appellant claims that the State failed to show that A.H. understood
“her burden to tell the truth.” 

The reporter’s record shows that A.H. was 12 years
old at the time of trial; that her birthday was July 28, 1989; that she was
reading at the second grade level; and that she was in special education
classes for reading, science, and social studies.  After A.H. identified appellant as her “step-dad” and said that
she and her mom lived with him while they were in Texas, relevant portions of
the reporter’s record read as shown:

Q: Now, [A.], when we talked
yesterday, what did we talk about was the most important thing that we have
to do in the courtroom?

 

A: Tell the truth.

 

Q: And when you talk about
[appellant], you promise to tell the truth?

 

A: Yes. 

 

Q: Now, [A.], did something happen
with [appellant] that you weren’t happy about?

 

A: Yes.

 

Q: And what did [appellant] do
that made you unhappy?

 

A: He touched me in the wrong
places.

 

Q: When you say the “wrong
places,” what do you mean by that?

 

A: He touched me in my boobs and
in my private spots.








Q: When you say your “private
spots,” what do you mean by that?

 

A: He touched me where I use the
bathroom.

 

Q: [A.], when did this start,
how old were you?

 

A: When I was in 2nd grade.

 

Q: When you said he touched your
boobs and touched your private where you go to the bathroom, did he touch your
front privates or your back privates?

 

A: Both.

 

                                                           *    *   
*

 

Q: And what else would happen when
you would be there?

 

A: He would make me touch his
private spots.

 

                                                           *    *   
*

 

Q: Would anything happen when you
would move your hand?

 

A: His penis would get very hard.

 

Q: Anything else?

 

A: White stuff would come out.

 

[A.H. testified that she decided to tell someone when
appellant told her that he wanted to “put it in” her when she was old enough;
shortly after that, she told the school counselor.] 

 

Q: When his penis touched your
mouth, can you explain a little more how that happened?

 

A: He would make me put my mouth
over his penis.

 

                                                           *    *   
*

 

Q: His mouth touched your private?

 








A: Yes.

 

Q: Can you explain how that
happened?

 

A: He licked my private.

 

                                                *    *  
*

 

Q: [A.], all this stuff that
you told us about, did it happen just one time or more than one time?

 

A: More than once.

 

Q: And when this first started
happening to you, how come you didn’t tell your mom or someone?

 

A: I was afraid she wouldn’t
believe me.

 

Q: Okay.  And was the school counselor the first person that you told?

 

A: Yes.  (Emphasis added)

 

Point of Error No. 2 is overruled.  A.H.’s testimony shows that she knew that
“the most important thing” that she had to do in the courtroom was to “tell the
truth” and that she promised to tell the truth.  A.H.’s testimony also shows that she appeared to “possess
sufficient intellect to relate transactions” with respect to which she was
interrogated.  See TEX.R.EVID.
601(a)(2).  Further, there was no timely
objection; consequently, the claimed error was not preserved for appellate
review.  See TEX.R.APP.P. 33.1(a)(1);
see and compare Hill v. State, 3 S.W.3d 249, 253 (Tex.App. - Waco 1999, pet’n
ref’d).   

                                                                        Assistance
of Counsel

In discussing a
defendant’s right to assistance of counsel under U.S. CONST. amend. VI and TEX.
CONST. art. I, § 10, the court said in Hernandez v. State, 726 S.W.2d 53, 57
(Tex.Cr.App.1986), that Texas “will follow in full” the standards which were
established in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80
L.Ed.2d 674 (1984), “for determining ineffectiveness of counsel and for
ascertaining when such ineffectiveness is prejudicial.”  The court quoted Strickland  in Hernandez v. State, supra at 55:








[T]he proper standard for attorney performance is that
of reasonably effective assistance....When a convicted defendant
complains of the ineffectiveness of counsel’s assistance, the defendant must
show that counsel’s representation fell below an objective standard of
reasonableness....A convicted defendant making a claim of ineffective
assistance must identify the acts or omissions of counsel that are alleged not
to have been the result of reasonable professional judgment.  The court must then determine whether, in
light of all the circumstances, the identified acts or omissions were outside
the wide range of professionally competent assistance....The court should
recognize that counsel is strongly presumed to have rendered adequate
assistance and made all significant decisions in the exercise of reasonable
professional judgment.

 

                                                           *    *   
*

 

The defendant must [also] show that there is a reasonable
probability that, but for counsel’s unprofessional errors, the result of the
proceeding would have been different. 
(Emphasis added)

 

See also and
compare Tompkins v. State, 869 S.W.2d 637 (Tex.App. - Eastland), pet’n
dism’d, 888 S.W.2d 825 (Tex.Cr.App.1994). 


Appellant has not shown ineffective assistance of counsel, nor has he
shown that the results of his trial would probably have been different if his
trial counsel had made objections to the testimony of the State’s witnesses
concerning the credibility of A.H. or if he had objected to the State’s failure
to have a competency hearing before A.H. testified.  Point of Error No. 3 is overruled.                               Sufficiency
of the Evidence

We have reviewed appellant’s claim that the evidence
is  “factually” insufficient to support
his conviction pursuant to the test discussed in Vasquez v. State, 67 S.W.3d
229, 236 (Tex.Cr.App.2002):

[W]e look at all of the evidence in a neutral light,
and will reverse only if the evidence supporting guilt is so obviously weak as
to render the conviction clearly wrong and manifestly unjust, or if that
evidence, although adequate when taken alone, is so greatly outweighed by the
overwhelming weight of contrary evidence as to render the conviction clearly
wrong and manifestly unjust.  Although a
reviewing court has, in a factual sufficiency review, some authority to
disregard evidence that supports the verdict, it must be appropriately
deferential so as to avoid substituting its own judgment for that of the fact
finder.  The reviewing court should not
substantially intrude upon the jury’s role as the sole judge of the weight and
credibility of witness testimony. 

 

See also
Goodman v. State, 66 S.W.3d 283, 285 (Tex.Cr.App.2001).  








The jury is the
“exclusive judge of the credibility of witnesses,” and the reconciliation of
conflicts in the testimony is within the “exclusive province of the jury.”  Jones v. State, 944 S.W.2d 642, 647
(Tex.Cr.App.1996), cert. den’d, 522 U.S. 832, 118 S.Ct. 100, 139 L.Ed.2d
54 (1997).  

                                                               Relevant Testimony

We have reviewed
all of the evidence; it is neither “so obviously weak” nor “so greatly
outweighed” by evidence to the contrary that the jury’s finding of guilt is
clearly wrong or manifestly unjust.  The
testimony by the therapist and the child which has been discussed above is also
supported by testimony from the “outcry witness” (the school counselor).  As noted in Tear v. State, 74 S.W.3d 555,
560 (Tex.App. - Dallas 2002), cert. den’d,       U.S.      ,
123 S.Ct. 1753, 155 L.Ed.2d 517 (2003), “testimony of a child victim alone is
sufficient to support a conviction for aggravated sexual assault,” and the
“victim’s outcry statement alone can be sufficient to support a conviction for
aggravated sexual assault.”  Point of
Error No. 4 is overruled.  

                                                                This
Court’s Ruling

The judgment of the
trial court is affirmed.

 

BOB DICKENSON

SENIOR JUSTICE

June 12, 2003

Do not publish.  See TEX.R.APP.P. 47.2(b).

Panel consists of: 
Arnot, C.J., and

Wright, J., and Dickenson, S.J.[3]











[1]See TEX. PENAL CODE ANN. § 22.021 (Vernon 2003) which
defines the offense, a felony of the first degree.





[2]See also TEX.R.EVID. 701, 702, 704, & 705.   





[3]Bob Dickenson, Retired Justice, Court of Appeals, 11th
District of Texas at Eastland sitting by assignment.