Affirmed and Memorandum Opinion filed July 6, 2010.

 

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NOS. 14-09-00396-CR

      14-09-00397-CR

___________________

 

Patrick George Merritt,
Appellant

 

V.

 

The State of Texas, Appellee



 



 

On
Appeal from the 176th District Court

Harris County,
Texas



Trial Court Cause Nos. 1135383 & 1135384

 



 

 

MEMORANDUM OPINION

A jury convicted appellant Patrick
George Merritt of aggravated sexual assault of a child in cause number 1135383
and assessed appellant’s punishment at 20 years’ confinement.  The jury also convicted
appellant of aggravated sexual assault of a child in cause number 1135384 and
assessed appellant’s punishment at 17 years’ confinement.  The trial court
ordered that the sentences be served concurrently.  Appellant appeals
contending (1) the evidence is legally and factually insufficient to support
the jury’s verdict; and (2) the trial court erred in its instructions to the
jury.  We affirm.

Background

Appellant regularly babysat for the complainant N.O.,[1] an 11-year old girl,
in 2006 and 2007.  N.O. lived with Leah Spencer, her legal guardian.  On
several occasions, Spencer or a neighbor found appellant and N.O. in the
upstairs bedroom of Spencer’s home with the door locked.  In September 2007, N.O.
told Spencer that appellant “[held] her down in the bedroom upstairs while the
door was locked . . . he kissed her using his tongue . . . [and] he put her
over the bed stomach down and would go through her panties from behind, and
back up to where he needed to be.”  N.O. told Spencer that this happened “more
than three times,” and that appellant told N.O. not to tell anyone.  Spencer
immediately called the police.

Appellant was indicted on two counts of aggravated
sexual assault of a child.  At trial, N.O. testified that appellant first made
her uncomfortable by putting his hands on her shoulders.  The physical touching
led to “wrestling,” during which appellant would push N.O. onto the floor and
pretend to strangle her.  Appellant then began to kiss N.O. on the cheek and
tried to move towards her mouth.  N.O. testified that while she and appellant
were upstairs with the door locked, appellant would “lay [her] down on the bed,”
after which he “flipped [her] over . . . [a]nd held her down and got his hand
and put it into [her] panties and he — squeezed [her] butt cheeks and he tried
to go towards the front.”  N.O. further testified that appellant “wiggled” his
hand around while his hand was in her panties, and that he “went kind of towards
the front but not all the way at first.”  When asked what part of her body
appellant touched, N.O. replied that it was “not all the way in the front but
it’s kind of in the middle of the front and your butt.”  The reporter’s record
reflects that N.O. nodded her head affirmatively when asked if appellant put
his fingers “between where [she] use[d] the restroom and where [her] bottom is.” 
The prosecutor noted, “And I see just for the record she’s nodding her head up
and down.”  When asked if appellant’s fingers would go in between “the two
pieces of skin that are down there where [she] use[s] the restroom,” N.O.
replied “Huh — kind of sort of.”  When asked again if appellant’s finger would
be “in between those two pieces of skin,” N.O. replied “Uh-huh.”

The jury found appellant guilty as charged in the
indictment and assessed punishment at confinement for 20 years in cause number
1135383 and 17 years for cause number 1135384.  The trial court signed its
judgment on April 22, 2009, in each cause number.  Appellant timely appealed
the trial court’s judgments.

Analysis

Appellant presents four issues on appeal.  In his
first two issues, appellant contends that the evidence is legally and factually
insufficient to support his conviction for aggravated sexual assault of a
child.  In his third and fourth issues, appellant contends that the trial court
erroneously instructed the jury regarding the terms (1) “penetration;” and (2)
“female sexual organ.”  We address each in turn.

I.         Legal
and Factual Sufficiency

In reviewing the legal sufficiency of the evidence,
an appellate court examines all of the evidence in the light most favorable to
the verdict to determine whether any rational factfinder could have found proof
of the essential elements of the offense beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 319 (1979); Rollerson v. State, 227
S.W.3d 718, 724 (Tex. Crim. App. 2007).  The court does not sit as a thirteenth
juror and may not re-evaluate the weight and credibility of the record evidence
or substitute its judgment for that of the factfinder.  Dewberry v. State,
4 S.W.3d 735, 740 (Tex. Crim. App. 1999).

Reconciliation of conflicts in the evidence is within
the exclusive province of the factfinder.  See Mosley v. State, 983
S.W.2d 249, 254 (Tex. Crim. App. 1998).  The appellate court’s duty is not to
reweigh the evidence, but to serve as a final due process safeguard ensuring
only the rationality of the factfinder.  See Williams v. State, 937
S.W.2d 479, 483 (Tex. Crim. App. 1996).  An appellate court faced with a record
that supports conflicting inferences must presume — even if not obvious from
the record — that the factfinder resolved any such conflicts in favor of the
verdict and must defer to that resolution.  Jackson, 443 U.S. at 326.

In reviewing the factual sufficiency of the evidence,
an appellate court must determine whether (1) the evidence introduced to
support the verdict is “so weak” that the factfinder’s verdict seems “clearly
wrong and manifestly unjust,” or (2) the factfinder’s verdict is nevertheless
against the great weight and preponderance of the evidence.  Watson v. State,
204 S.W.3d 404, 414-415 (Tex. Crim. App. 2006).  In a factual sufficiency
review, the court views all of the evidence in a neutral light.  Johnson v.
State, 23 S.W.3d 1, 6-7 (Tex. Crim. App. 2000) (en banc).  If the court
finds the evidence factually insufficient, the court must remand the case for a
new trial.  Clewis v. State, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996).

In order to declare that an evidentiary conflict justifies
a new trial, an appellate court must rely on some objective basis in the record
demonstrating that the great weight and preponderance of the evidence
contradicts the jury’s verdict.  See Lancon v. State, 253 S.W.3d 699,
706-07 (Tex. Crim. App. 2008).  An appellate court should not intrude upon the
factfinder’s role as the sole judge of the weight and credibility of witness
testimony.  Vasquez v. State, 67 S.W.3d 229, 236 (Tex. Crim. App.
2002).  The factfinder may choose to believe or disbelieve any portion of the
testimony presented at trial.  Bargas v. State, 252 S.W.3d 876, 887
(Tex. App.—Houston [14th Dist.] 2008, no pet.) (citing Sharp v. State,
707 S.W.2d 611, 614 (Tex. Crim. App. 1986) (en banc)).  Due deference must be
given to the factfinder’s determinations concerning the weight and credibility
of the evidence and reversal of those determinations is appropriate only to
prevent the occurrence of a manifest injustice.  Martinez v. State, 129
S.W.3d 101, 106 (Tex. Crim. App. 2004).

A person commits the offense of sexual assault against
a child if he intentionally or knowingly causes the penetration of the sexual
organ of a child by any means.  Tex. Penal Code Ann. § 22.011(a) (Vernon
2003).  “Child” is defined as any person younger than 17 years of age who is
not the spouse of the actor.  Id. § 22.011(c)(1) (Vernon 2003).  The
offense becomes aggravated sexual assault against a child if the victim is
younger than 14 years of age.  Id. § 22.021(a)(2)(B) (Vernon 2003). 

Proof of even the slightest penetration of the sexual
organ is sufficient to find that a sexual assault has occurred so long as it is
proved beyond a reasonable doubt; vaginal penetration is not required.  See
Steadman v. State, 280 S.W.3d 242, 248 (Tex. Crim. App. 2009);
Luna v. State, 515 S.W.2d 271, 273 (Tex. Crim. App. 1974).  The term
“sexual organ,” when referring to the female sexual organ, is a more general
term that includes both the vagina and the vulva.  Everage v. State, 848
S.W.2d 357, 358 (Tex. App.—Austin 1993, no pet.).  More than mere
contact with the outer vaginal lips is required, but reaching beneath a fold of
skin into an area not usually exposed to view — even in nakedness — will
constitute penetration.  Vernon v. State, 841 S.W.2d 407, 409 (Tex.
Crim. App. 1992) (en banc).

Physical or forensic evidence is not necessary to
support a conviction, and is only a factor for the jury to consider in weighing
the evidence.  Lee v. State, 176 S.W.3d 452, 458 (Tex. App.—Houston [1st
Dist.] 2004), aff’d, 206 S.W.3d 620 (Tex. Crim. App. 2006).  The
uncorroborated testimony of a child victim is sufficient to support a
conviction for sexual assault.  Tex. Crim. Proc. Code Ann. § 38.07 (Vernon
2005); Jensen v. State, 66 S.W.3d 528, 534 (Tex. App.—Houston [14th
Dist.] 2002, pet. ref’d).  Child victims of violent crimes cannot be expected
to testify with the same clarity and ability as adult victims.  Villalon v.
State, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990) (en banc); Hemphill v.
State, 826 S.W.2d 730, 733 (Tex. App.—Houston [14th Dist.] 1992, pet.
ref’d, untimely filed).  Therefore, courts liberally construe the testimony
given by child victims of sexual abuse.  See Lee, 176 S.W.3d at 457.  

In his first and second issues, appellant argues that
the evidence is legally and factually insufficient to support a finding that
appellant penetrated N.O.’s sexual organ.  Specifically, appellant argues that
(1) the only evidence presented was N.O.’s testimony, which appellant contends allowed
for alternative interpretations and was not sufficient to demonstrate that
penetration had occurred; (2) the State offered no medical evidence or physical
evidence; and (3) the testimony by Spencer, the outcry witness, did not include
testimony regarding touching or penetration of N.O.’s sexual organ.

At trial, N.O. testified as follows:

THE STATE:  Okay. Can you tell us what he would do that
would make you feel uncomfortable?

N.O.:  (Pause.)  He would — he would lay me down on the
bed.  I was trying to get away, and — he flipped me over.  (Witness crying.) 
And held me down and got his hand and put it into my panties and he — squeezed
my butt cheeks and he tried to go towards the front.

*                                  *                                  *

THE STATE:  And where would he move his hand after he did
that?

N.O.:  He went towards the front part, like not — like
first, like — he went kind of towards the front but not all the way at first.

THE STATE:  Okay.  And what was he doing with his hand when
he would do that?

N.O.:  Like kind of wiggling ‘em around.

THE STATE:  And what do you call the part that he was
touching when he was doing that?

N.O.:  Like — it’s not all the way in the front but it’s
kind of in the middle of the front and your butt so kind of — in between the
legs but not all the way in the front part.  I don’t know the name of it.  I’m
not a scientist.

THE STATE:  Okay.  Okay.  But it’s the part not all the way
in the front where you use the restroom, but between there and where your
bottom is; is that right?

N.O.:  Uh-huh.

THE STATE:  Okay.  And when he would put his hand in there
that’s where his fingers would be?

N.O.:  (Nods head.)

THE STATE:  In the part between where you use the restroom
and where your bottom is?

N.O.:  (Nods head.)

THE STATE:  Okay.  And I see just for the record she’s
nodding her head up and down.  When he would put his hand in there, would it —
would it go in between your legs?

N.O.:  No.

THE STATE:  Not in between your legs?

N.O.:  But like — okay, it would be in between my legs but
it didn’t go, like, inside.

THE STATE:  Okay.  So it didn’t go in the hole, is that
what you’re saying?

N.O.:  Yes.

THE STATE:  Okay.  Okay.  But it would go in between there,
is that what you’re saying?

N.O.:  Uh-huh.

*                                  *                                  *

THE STATE:  And just so we can be specific enough, okay,
you know the two pieces of skin that are down there where you use the restroom,
right?

N.O.:  (Nods head.)

THE STATE:  Okay.  Whenever his finger would be in your
pants would it go in between those two pieces of skin but not in the hole?

N.O.:  Huh — kind of sort of.

THE STATE:  Okay.  Can you explain what you mean by that.

N.O.:  Like, the two pieces of skin that would be right
there, are there, but like he wouldn’t put ‘em in the hole so they wouldn’t —
they weren’t really in, they were kind of, in between.

THE STATE:  It would be in between those two pieces of
skin?

N.O.:  Uh-huh.

THE STATE:  Is that right?

N.O.:  (Nods head.)

Appellant argues that the only evidence of
penetration was a guttural response which the court reporter recorded as
“Uh-huh” when N.O. was questioned regarding whether appellant’s hand went
between “those two pieces of skin that are down there where [she] use[s] the
restroom.”  Appellant claims that N.O.’s responses of “Uh-huh” and a nod were
not testimony, and that the issue of whether penetration had occurred was
therefore left to the jury’s interpretation of N.O.’s nods and non-verbal
responses.

Nods and expressions such as “Uh-huh” are properly
recorded by the court reporter.  Hill v. State, 3 S.W.3d 249, 252 (Tex.
App.—Waco 1999, pet. ref’d); Uniform Format Manual for Texas Court Reporters,
62 Tex. B.J. 583, 592 (1999).[2]  If counsel or the
court fails to refer to the witness’s affirmative or negative gestures, then
expressions such as “Uh-huh” and “Huh-uh” should be transcribed accordingly.  Hill,
3 S.W.3d at 252; Uniform Format Manual, 62 Tex. B.J. at 583, 591-92.  “Uh-huh” is used when a witness
answers affirmatively, and “huh-uh” is used for negative answers.  Uniform
Format Manual, 62 Tex. B.J.
at 592.  

N.O. testified that appellant would “lay [her] down
on the bed,” after which appellant “flipped [her] over . . . held [her] down
and got his hand and put it into [her] panties . . . and he tried to go towards
the front.”  N.O. further testified that the appellant “went kind of towards
the front but not all the way at first,” and that while his hand was there he
was “kind of wiggling ‘em around.”  When asked if appellant’s fingers went “in
between those two pieces of skin” that are “down there where [she] use[d] the
restroom,” N.O. responded “Uh-huh” and nodded her head affirmatively.  This
evidence establishes penetration of the vaginal lips, which is sufficient to
support a conviction of aggravated sexual assault.  See Steadman, 280
S.W.3d at 247-48; Vernon, 841 S.W.2d at 409.  

Courts routinely have held that the jury is the sole
judge of the facts, the credibility of the witnesses, and the weight to be
given the evidence.  Wyatt v. State, 23 S.W.3d 18, 30 (Tex. Crim. App.
2000); Beckham v. State, 29 S.W.3d 148, 151 (Tex. App.—Houston [14th
Dist.] 2000, pet. ref’d).  The jury is in the best position to evaluate the
credibility of witnesses and the evidence, and we must afford due deference to
its determination.  Marshall v. State, 210 S.W.3d 618, 625 (Tex. Crim.
App. 2006).  Because physical or forensic evidence is not necessary to support
a conviction, and the uncorroborated testimony of a child victim is sufficient
to support a conviction, we defer to the finding of the jury.  Tex. Crim. Proc.
Code Ann. § 38.07; Lee, 176 S.W.3d at 458; Jensen, 66 S.W.3d at
534.

Viewing the evidence in the light most favorable to
the verdict, the jury could have found beyond a reasonable doubt that appellant
committed the offense of aggravated sexual assault.  See Jackson, 443
U.S. at 326; Evans v. State, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006).
 Further, viewing all of the evidence in a neutral light, the jury could have
found beyond a reasonable doubt that the appellant intentionally or knowingly
penetrated the female sexual organ of N.O.  See Johnson, 23 S.W.3d at
11.  The evidence supporting the verdict is not so weak that the verdict  is clearly
wrong and manifestly unjust, nor is the verdict against the great weight and
preponderance of the evidence.  See Watson, 204 S.W.3d at 414-15.  Thus,
we find the evidence legally and factually sufficient to sustain appellant’s
convictions for aggravated sexual assault of a child, and overrule appellant’s
first and second points of error.

II.
      Charge Error

In his third and fourth issues, appellant argues that
the trial court erred by describing the terms “penetration” and “female sexual
organ” in the jury charge.  

A.        Standards for
Charge Error

We review a trial court’s formulation of the jury charge
under an abuse of discretion standard.  See Wesbrook v. State, 29 S.W.3d
103, 122 (Tex. Crim. App. 2000) (en banc). When reviewing allegations of charge
error, we must first determine whether error actually exists in the charge.  Ngo
v. State, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (en banc).  If error
is found, we must determine whether it caused sufficient harm to require
reversal.  Id.  The degree of harm necessary for reversal depends on
whether the appellant preserved the error by objection.  Id.  Jury
charge error requires reversal when the appellant has properly objected to the
charge and we find “some harm” to his rights.  Id. (citing Almanza v.
State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (en banc), superseded
on other grounds by Rodriguez v. State, 758 S.W.2d 787 (Tex. Crim. App.
1988)).  We determine whether there was “some harm” by examining the entire
jury charge, the state of the evidence, the arguments of counsel, and other
relevant information as found in the record as a whole.  Almanza, 686
S.W.2d at 171; Bargas, 252 S.W.3d at 902.

A trial court has broad discretion in submitting explanatory
phrases to the jury.  Macias v. State, 959 S.W.2d 332, 336 (Tex.
App.—Houston [14th Dist.] 1997, pet. ref’d).  A definition is proper if it
helps the jury in answering the questions in the court’s charge and is
supported by the evidence and inferences drawn from the evidence.  Id.  As
a general rule, terms need not be defined in the jury charge if they are not statutorily
defined and jurors may understand them to have any meaning that is acceptable
in common parlance.  Grotti v. State, 273 S.W.3d 273, 281 (Tex. Crim.
App. 2008).  Terms that have acquired a technical or legal meaning may require
an explicit definition.  Id.  Defining terms is particularly necessary when
there is a risk that jurors might arbitrarily apply their own personal
definitions of the term or when the definition is necessary for a fair
understanding of the evidence.  Middleton v. State, 125 S.W.3d 450, 454
(Tex. Crim. App. 2003) (en banc).  

The trial judge must not convey any personal opinion
in the jury charge as to the truth or falsity of any evidence.  Russell v.
State, 749 S.W.2d 77, 78 (Tex. Crim. App. 1988) (en banc).  A charge that
assumes the truth of a controverted issue is an improper comment on the weight
of the evidence.  Whaley v. State, 717 S.W.2d 26, 32 (Tex. Crim. App.
1986) (en banc). 

B.        Penetration

The trial court stated as follows in the jury charge:

Penetration occurs so long as contact with the female
sexual organ could reasonably be regarded by ordinary English speakers as more
intrusive than contact with the outer vaginal lips and is complete, however
slight, if any.

Touching beneath the fold of the external genitalia amounts
to penetration within the meaning of the aggravated sexual assault statute.

Both paragraphs are taken verbatim from Karnes v.
State, 873 S.W.2d 92, 96 (Tex. App.—Dallas 1994, no pet.).  In turn, Karnes
relied on Vernon v. State, 841 S.W.2d 407 (Tex. Crim. App. 1992) (en
banc).  Vernon held that in the context of the aggravated sexual assault
statute, penetration means “pushing aside and reaching beneath a natural fold
of skin into an area of the body not usually exposed to view,” and “contact . .
. [that] could reasonably be regarded by ordinary English speakers as more
intrusive than contact with [the] outer vaginal lips.”  See Vernon, 841
S.W.2d at 409. 

Appellant contends that these statements are an
improper comment on the weight of the evidence.  Appellant further argues that
the absence of the phrase “if any” at the end of the second paragraph also
constituted an improper comment on the weight of the evidence.  Appellant
objected to the charge on these grounds in the trial court; therefore, we must
first determine whether error exists in the charge, and then if error exists,
whether the error resulted in “some harm” to appellant.  See Ngo,
175 S.W.3d at 743; Almanza, 686 S.W.2d at 171.

The first paragraph states that “penetration . . . is
complete, however slight.”  This language properly is included in the jury
charge in sexual assault cases.  Wilson v. State, 905 S.W.2d 46, 48-49
(Tex. App.—Corpus Christi 1995, no pet.); Rawlings v. State, 874 S.W.2d
740, 744-45 (Tex. App.—Fort Worth 1994, no pet.).  The language used by the
court told the jury that the penetration element of the State’s case would be
satisfied if the evidence showed penetration, however slight, beyond a
reasonable doubt.  See Rawlings, 874 S.W.2d at 744-745.  This language
did not inform or advise the jury that penetration had occurred in the case.  See
Wilson, 905 S.W.2d at 48-49.  The absence of the phrase “if any” in the
second paragraph does not suggest that penetration occurred.  See Wilson,
905 S.W.2d at 49.  

The remainder of the challenged language includes
additional statements that are correct statements of the law.  See Vernon,
841 S.W.2d at 409; Karnes, 873 S.W.2d at 96. Because the term
“penetration” has a technical or legal meaning, the trial court acted within
its discretion in describing the term for the jury.  See Vernon, 841
S.W.2d at 409; Grotti, 273 S.W.3d at 281.  The trial judge did not
convey to the jury the judge’s personal opinion as to the truth or falsity of
the evidence regarding penetration, nor did the instruction assume the truth of
a controverted issue.  See Russell, 749 S.W.2d at 78; Whaley, 717
S.W.2d at 32.  Therefore, the challenged portions of the jury charge did not
constitute a comment on the weight of the evidence.

Even if it is assumed for argument’s sake that the
inclusion of the disputed language in the charge was erroneous, appellant
cannot establish harmful error.  When conducting a harm analysis, we consider
the state of the evidence.  Almanza, 686 S.W.2d at 171; Bargas,
252 S.W.3d at 902.  In nodding and replying “Uh-huh” when asked if appellant’s
fingers went “in between those two pieces of skin” that are “down there where
[she] use[d] the restroom,” and in describing how appellant’s hand would be in
her panties and while it was in there he was “wiggling ‘em around,” the
complainant testified that the necessary penetration had occurred.  The State
did not emphasize the disputed language or discuss penetration during its
closing argument.  See Almanza, 686 S.W.2d at 171 (the arguments of
counsel are a factor when determining harm).  The contested statements permissibly
informed the jury as to how the penetration element of the State’s case would
be satisfied if supported by the evidence.  See Rawlings, 874 S.W.2d at
744.  Under these circumstances, appellant cannot establish harm from the
challenged portions of the jury charge.  See Brown v. State, 122 S.W.3d
794, 797, 802-04 (Tex. Crim. App. 2003).  

Accordingly, any asserted error in the charge is
harmless, and the appellant’s third point of error is overruled.

C.        Female Sexual
Organ

In his fourth issue on appeal, appellant argues that the
trial court erred in defining the term “female sexual organ.”  Appellant
contends that the definition given  is overbroad, and that the trial court
should have omitted from the definition those portions of the sexual organ that
could not be penetrated.  The jury charge stated as follows:

“Female sexual organ” is defined as the entire female
genitalia, including both vagina and the vulva.  Vulva is defined as the
external parts of the female genital organs, including the labia majora, the
labia minora, mons veneris, clitoris, perineum, and the vestibule or entrance
to the vagina.

The trial court’s definition of “female sexual organ”
was not erroneous.  The term “female sexual organ” refers to “the entire female
genitalia, including both the vagina and the vulva.”  Karnes, 873 S.W.2d
at 96.  The vagina is the genital canal in the female.  Everage, 848
S.W.2d at 358.  The “vulva” is defined as “the external parts of the female
genital organs, including the labia majora, the labia minora, mons veneris,
clitoris, perineum, and the vestibule or entrance of the vagina.”  Breckenridge
v. State, 40 S.W.3d 118, 124 (Tex. App.—San Antonio 2000, pet. ref’d)
(citing Stedman’s Medical Dictionary
1367 (3d ed. 1972)).  To find appellant guilty of aggravated sexual assault,
the jury was required to find that penetration occurred, meaning that contact
was more intrusive than contact with the complainant’s outer vaginal lips.  See
Vernon, 841 S.W.2d at 409.  Thus, we cannot conclude that the trial court
abused its discretion in defining the term “female sexual organ.”  Similar
language has been found to be a proper jury instruction.  See Breckenridge,
40 S.W.3d at 122.  

Appellant further argues that even if this definition
were proper, the court should have further defined the words “mons venerus,
clitoris, and perineum” because they are not commonly used terms.  Because
penetration of those specific parts was not at issue, a more detailed
definition of them was not required.  See Macias, 959 S.W.2d at 336.  We
conclude that the trial court’s definition of “female sexual organ” was
proper.  We overrule appellant’s fourth issue.

Conclusion

We affirm the trial court’s judgment.

 

                                                                                    

                                                                        /s/        William
J. Boyce

                                                                                    Justice

 

 

 

Panel consists of Justices
Frost, Boyce, and Sullivan.

Do
Not Publish — Tex. R. App. P. 47.2(b).









[1] To protect the child
victim’s identity, she is referred to as “N.O.”





[2] In an April 12, 1999
order, the Texas Court of Criminal Appeals adopted the Uniform Format Manual
for Texas Court Reporters.  The order became effective May 1, 1999. The Uniform
Format Manual has also been adopted by the Supreme Court of Texas