**William TOMPKINS, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 11–92–131–CR.**

Court of Appeals of Texas, Eastland.

Jan. 6, 1994.

Rehearing Denied Feb. 24, 1994.

Frank W. Henderson, Tyler, for appellant.

Jack Skeen, Jr., Crim. Dist. Atty., Tyler, for appellee.

## Opinion

DICKENSON, Justice.

The jury found that William Tompkins was guilty of the aggravated sexual assault of a child,[1] and the trial judge assessed his punishment at confinement for a term of 40 years.[2] We affirm.

### Background Facts

Appellant is the biological father of the child. She was 12 years old at the time of the offense. Appellant testified in his own behalf and denied any improper conduct with the child. The child testified that her father started having sexual intercourse with her on her twelfth birthday, and she said that he also had her perform oral sex on him. After her father was arrested, the child recanted her report of the sexual assaults and said that those events did not occur; however, she testified at the time of trial that they did in fact occur. These were the only witnesses with actual knowledge of what had happened. The defense was that the child was a "troubled child" who had been sexually abused by

two different stepfathers and that she had been sending and receiving sexually oriented notes to young boys in her class at school. The jury had difficulty in reaching a verdict, but it finally returned a unanimous verdict of guilty.[3]

### Points of Error

Appellant has briefed twelve points of error. He argues in the first three points that the trial court erred in denying his motion for new trial because: (1) the verdict was not the fair expression of opinion of all the jurors; (2) he did not receive a fair and impartial trial; and (3) the verdict was not in fact unanimous. He argues in Point 4 that the trial court erred in denying his right to present evidence at the hearing on his motion for new trial, and he argues in the next seven points of error that he was denied a fundamentally fair trial because he did not have the reasonably effective assistance of counsel as required by U.S. CONST. amend. VI and TEX. CONST. art. I, § 10. He complains in Point 5 that his counsel failed to object to opinion testimony of a psychologist who bolstered the credibility of the child; in Point 6 that his counsel failed to require the State to elect which act of intercourse it was relying upon for conviction; in Point 7 that his counsel failed to request a limiting instruction as to the jury's consideration of extraneous offenses; in Point 8 that his counsel failed to object to extraneous offenses; in Point 9 that his counsel failed to object to inadmissible hearsay statements; in Point 10 that his counsel failed to strike two jurors who had answered on voir dire that members of their families had been victims of childhood sexual abuse; and in Point 11 that his counsel failed to object to the trial court's determination of the child's competency to testify in front of the jury. Appellant argues in his final point that he is entitled to a new trial because the

---

1. TEX.PENAL CODE ANN. § 22.021 (Vernon 1989) defines the offense and declares it to be a felony of the first degree.

2. TEX.PENAL CODE ANN. § 12.32 (Vernon Supp.1994) provides that a person convicted of a felony of the first degree shall be punished by confinement for life, or for any term of not less than 5 nor more than 99 years. A fine of not more than $10,000 may also be assessed.

3. There was testimony at the hearing on appellant's motion for new trial that two of the jurors were not actually convinced beyond a reasonable doubt that appellant was guilty; the testimony was to the effect that they had joined in the verdict because they had misunderstood the meaning of the jury instruction that the verdict had to be unanimous.

State's witness referred to him as a "sexual addict," arguing that the trial court's instruction to disregard that comment was not sufficient to cure the error. All of the points of error have been considered, and each of them is overruled for the reasons stated hereinbelow.

### Unanimous Verdict

■ Appellant argued his first three points together because, as he said, they are "inextricably linked with each other." In these points, appellant argues that the trial court erred in denying the motion for new trial because "the verdict was not the result of the fair expression of opinion of all the jurors, was not the result of a fair and impartial trial, and was not unanimous."

The statement of facts from the hearing on appellant's motion for new trial shows the following:

Q: [DEFENSE COUNSEL] Would you state your name, please?

A: Cuvia Nell Richardson.

Q: Ms. Richardson, were you one of the jurors on the case when this case was tried in this court on the case in chief?

A: Yes, I was.

Q: Were you ever convinced that Mr. Tompkins was guilty of the offense that he was charged with?

[The State's objection was overruled.]

A: No, I was not.

Q: You voted—did you ever vote not guilty in the deliberation?

A: Yes, I did.

Q: How many times if you recall?

A: About three times.

Q: Did you ever vote guilty?

A: On the final one.

Q: Why did you change your vote from not guilty to that of guilty?

[The State's objection was overruled.]

A: I voted guilty because I thought we had to come up with consensus of the entire jury.

Q: Were you ever convinced at any time of the guilt of the defendant, Mr. Tompkins?

A: No, I was not convinced.

\* \* \* \* \* \*

Q: [PROSECUTOR] Did you understand the instructions the judge gave that day in the courtroom?

A: Yes, I thought it had to be a consensus from the jurors.

Q: Did you also understand you were to vote your conscience and what you believed?

A: Well, I did at first until it was about six something. Then I thought we had to come to a total agreement.

Q: So you never thought you could continue to maintain your personal beliefs as to truth—as to guilt or innocence?

A: No.

Q: You thought you had to change to go with the group?

A: That is correct.

Q: Was that ever in anyone's instructions that you had to change to go with the group?

A: Not to change to go with the group but I thought the group had to be in consensus.

Q: To get a verdict?

A: To get a verdict, yes.

THE COURT: Let me ask you, what is your definition of consensus?

A: The entire jurors that were on the panel.

THE COURT: All right. Have you got a consensus when you are voting yes and thinking no?

A: Well, no, the day I voted when I was on the witness stand I was hoping that my voice would not be heard loud enough to say yes.

THE COURT: Did any members of the jury threaten you or coerce you or brow beat you into voting guilty when you thought not guilty?

A: No, I was not—no.

THE COURT: You changed on your own volition?

A: That's correct.

THE COURT: All right. I've heard all I want to hear from this witness. You may step down.

\* \* \* \* \* \*

THE COURT: It's the ruling of the court that the juror cannot testify to their mental processes that they went through. The court asked the pertinent question and she answered that question no, so I sustain the motion [to strike affidavits of jurors].

The first three points of error are overruled. The trial court did not err in overruling the motion for new trial. The testimony from Juror Richardson does not show jury misconduct. The record shows that, when the jury was polled, she announced in open court that she voted "guilty." Her private reservations do not cancel the legal effect of her vote; consequently, there was a unanimous verdict finding appellant guilty. The cases cited by appellant show actual jury misconduct. In the case before us, there was no misconduct. The plurality opinion in *Buentello v. State*, 826 S.W.2d 610 at 614 (Tex.Cr.App.1992), states that under TEX. R.CRIM.EVID. 606(b):

> [T]he test for admission of juror testimony at a hearing on a motion for new trial is not whether the conduct constitutes an "overt act," but whether the matter sought to be elicited is deemed by the trial court to be relevant to the validity of the verdict. What is considered "relevant" will be determined on a case-by-case basis.

We agree with the trial court that the juror's testimony does not invalidate the verdict. There was no showing of any jury misconduct. Points 1, 2, and 3 are overruled.

*Excluded Evidence—Motion for New Trial*

■ The offer of proof of what Juror Ivy [4] would have testified was sufficient under TEX.R.CRIM.EVID. 103(b); consequently, the trial court did not err in refusing to hear evidence which was "essentially" the same as the testimony from Juror Richardson. The fourth point of error is overruled.

*Assistance of Counsel*

The Texas Court of Criminal Appeals stated in *Hernandez v. State*, 726 S.W.2d 53 at 57 (Tex.Cr.App.1986), that this State:

> [W]ill follow in full the *Strickland* [5] standards in determining effective assistance [of counsel] and prejudice resulting [from ineffective assistance].

*Hernandez* quotes the applicable standards from *Strickland*, 726 S.W.2d at 55:

> [T]he proper standard for attorney performance is that of reasonably effective assistance.... When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness.

\* \* \* \* \* \*

A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.... [T]he court should recognize that *counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.* 466 U.S. at 686–90, 104 S.Ct. at 2064–66. (Emphasis added)

*Hernandez* then points out that under *Strickland*:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the

4. Immediately after Juror Richardson was excused, the record shows the following:
   [DEFENSE COUNSEL]: Call Carolyn Ivy, Your Honor.
   THE COURT: Mr. Stephens, I'm going to sustain the State's motion if this is all you've got.
   [DEFENSE COUNSEL]: That would be essentially what the next witness, Ms. Ivy, would testify to.

5. See *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

outcome. 466 U.S. at 694, 104 S.Ct. at 2068.

The Court of Criminal Appeals made it clear in *Hernandez v. State,* supra at 58, that a reviewing court "cannot sit in hindsight" or find error from "a calculated risk" and that the right to effective counsel does not require "error-free counsel."

▮ Our review of the record shows that appellant received effective assistance of counsel. His trial attorney gave him a vigorous defense and caused two of the jurors to have doubts as to appellant's guilt. Appellant's trial attorney participated in the voir dire examination of the jury panel; made appropriate objections to the State's case; put on witnesses in support of appellant's claim of innocence; made an appropriate closing argument; and called witnesses in support of the motion for new trial. Most of appellant's complaints relate to matters of trial tactics and strategy, matters which a reviewing court should not judge with 20–20 hindsight. Counsel must be allowed to take calculated risks in defending their clients, and the fact that the client is convicted does not mean that the attorney's assistance was ineffective. Counsel can make errors of judgment without being branded as "ineffective."

▮ Appellant complains as to counsel's conduct relating to the State's psychologist. Our review of the record shows effective cross-examination of the psychologist which revealed her bias and undermined her credibility.[6] Appellant also complains that counsel should have required the State to elect which sexual assault to present to the jury and kept the other alleged assaults out of evidence as extraneous acts. We note that this case was tried before the Court of Criminal Appeals issued its opinions in *McGlothlin v. State,* 848 S.W.2d 139 (Tex.Cr.App.1992), and *Vernon v. State,* 841 S.W.2d 407 (Tex.Cr. App.1992). Counsel's trial strategy was to show that the numerous sexual assaults could

not have occurred in the manner claimed by the State. There was evidence that cast doubt on the child's testimony as to the times and places of the various assaults, supporting appellant's position that the child was not telling the truth. The evidence showed that the child had made the charges and then recanted them, and there was a valid tactical basis for allowing her to relate offenses which the evidence indicated probably did not occur. This approach to the evidence would not require a limiting instruction. Appellant argues that counsel failed to object to inadmissible hearsay. The "outcry testimony" was admissible under TEX.CODE CRIM.PRO.ANN. art. 38.072 (Vernon Supp. 1994). There is no showing that the two jurors who answered that members of their family had been sexually abused would have been more apt to believe the testimony of a child who had been previously abused by two of her mother's former husbands or boyfriends. Whether the competency hearing was outside the presence of the jury or not, the jury would have heard the testimony of the child. It would have been obvious that the court permitted the child to testify whether the preliminary questions were asked outside the jury or not. Taken as a whole, we find that counsel's assistance was reasonably effective. As noted in *Hernandez* and *Strickland,* appellant was not entitled to "error-free counsel." Points 5 through 11 are overruled.

### Instruction to Disregard "Sexual Addict" Reference

▮ During the psychologist's testimony, she explained one of her answers by saying:

At times [complainant] made comments to the effect that Dad did sexual things to her that her Mother wouldn't let him do, that Dad did sexual things to her when, quote, he didn't get enough from her mom, that Dad's—what could we say? She hasn't used the words to say that Dad was per-

---

**6.** The psychologist claimed that "anywhere from a third to a half of all female children experience some incidence [sic] of sexual abuse by the time they are 18." We note that the trial judge stated in a bench conference outside the hearing of the jury during the psychologist's testimony:

I ain't giving a hell of a lot of credence to what this woman says myself. What she's testifying to here has been nothing but speculation. . . . She doesn't know any more about what happened here than I do. . . . I'm damn near ready to strike her testimony.

haps a sexual addict but—[Her testimony was interrupted by an objection].

The trial court sustained the objection and instructed the jury to disregard the last answer. The case falls within the general rule that any error is cured when the trial court sustains an objection to an improper remark and instructs the jury to disregard it. See, e.g., *Stoker v. State,* 788 S.W.2d 1 at 13 (Tex.Cr.App.1989).

*Ruling of this Court*

The judgment of the trial court is affirmed.