

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00152-CR

———————————————

SHANNON MONDRELL MOORE, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 297th District Court
Tarrant County, Texas
Trial Court No. 1668636

Before Womack, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

Appellant Shannon Mondrell Moore appeals his convictions for aggravated sexual assault of a child (Count One) and indecency with a child by exposure (Count Two). In seven issues, Moore argues that the trial court erred by denying his challenges for cause to certain prospective jurors, admitting irrelevant evidence, admitting hearsay that did not fall within an applicable exception, denying his motion for a mistrial as to his guilt or innocence on Count One, and denying his motion for a directed verdict. We will affirm.

## I. BACKGROUND

The victim in this case, S.M.,[1] is Moore's daughter. When S.M. was in the second grade she moved from Louisiana to Texas with her mother and her half-sister, J.J. Initially, Moore—who was not in a relationship with Mother at the time—remained in Louisiana, but he eventually moved to Texas and began living with Mother, J.J., and S.M. in a two-bedroom apartment. The girls shared one room; Moore and Mother shared the other.

Moore and Mother both had jobs. Moore typically got off work earlier than Mother, so he was often home alone with the girls in the afternoon. During these

---

[1]Because S.M. is a minor, we use pseudonyms to refer to her and her family members other than the appellant. *See* Tex. R. App. P. 9.10(a)(3); *Esparza v. State*, No. 02-18-00196-CR, 2019 WL 5608233, at *1 n.1 (Tex. App.—Fort Worth Oct. 31, 2019, pet. ref'd) (mem. op., not designated for publication).

times, he would often take S.M. out to spend time alone with her, causing J.J. to feel left out.

In December 2016, when S.M. was eight years old, she was on the couch with Moore, and he began tickling her stomach. Moore then took her to his bedroom, put her on the bed, pulled off her pants, put her legs up, and licked her vagina. He then moved her into the bedroom closet and removed his pants. S.M. saw Moore's penis, which she described as being "hard" and "standing" at the time. Moore then grabbed her buttocks with both hands and squeezed them.

S.M. told J.J. what Moore had done and asked her to call Mother. J.J. texted Mother that Moore had "touched [S.M.] somewhere that he shouldn't have." Mother spoke to S.M., who confirmed that Moore had touched her inappropriately. Mother believed S.M. and was both angry and disgusted with Moore. She picked Moore up from work and took him back to their apartment so that he could hear S.M. describe what happened. Before S.M. could describe much of what had happened, Moore began yelling, screaming, and accusing her of lying. Mother ultimately called the police.

The police notified Child Protective Services (CPS), but Moore was not arrested at that time. After S.M. was screened by a CPS investigator, a forensic interview[2] was scheduled. Following the forensic interview, S.M. was sent to the Child

---

[2]As the forensic interviewer explained at trial, "A forensic interview is a developmentally sensitive way of gathering information about allegations of abuse or

3

Advocacy Resource and Evaluation (CARE) team[3] at Cook Children's Medical Center for further evaluation, including a SANE exam.

Ultimately, Moore was charged with first-degree felony aggravated sexual assault of a child and third-degree felony indecency with a child by exposure. *See* Tex. Penal Code Ann. §§ 21.11(a)(2), 22.021(a)(1)(B), (2)(B). He pleaded not guilty, and a jury trial was held. After hearing the evidence, the jury found Moore guilty of both counts. He elected to have a jury assess his punishment. The jury assessed Moore's punishment for Count Two at five years' imprisonment but could not reach a unanimous verdict regarding the punishment for Count One. Accordingly, the trial court granted Moore's motion for a mistrial as to punishment for Count One. After a second punishment trial, a jury assessed Moore's punishment for Count One at thirty-three years' imprisonment. The trial court signed judgments sentencing Moore in accordance with the juries' assessments. Moore timely appealed.

## II. DISCUSSION

As noted, Moore raises seven issues on appeal. But for the reasons set forth below, none of these issues provides a valid basis for reversing his convictions.

---

exposure to abuse. It's conducted by a neutral professional, highly trained, as part of a larger investigation. It utilizes research and practice and form techniques."

[3]As the sexual assault nurse examiner (SANE) explained, the CARE team "is an outpatient clinic within Cook's that takes care of [children] that have had outcries of any type of abuse," including sexual abuse.

## A. For-Cause Challenges to Prospective Jurors

In his first issue, Moore contends that the trial court abused its discretion by denying his for-cause challenges to certain prospective jurors who had purportedly stated that they could not consider the entire punishment range for Count One. We disagree.

### 1. Applicable Law and Standard of Review

A prospective juror may be challenged for cause if he has a bias or prejudice against the defendant or against the law upon which either the State or the defense is entitled to rely. Tex. Code Crim. Proc. Ann. art. 35.16(a)(9), (c)(2). The test is whether the prospective juror's bias or prejudice would substantially impair his or her ability to carry out his or her juror duties in accordance with the instructions and oath. *Buntion v. State*, 482 S.W.3d 58, 84 (Tex. Crim. App. 2016). Bias exists as a matter of law when a juror admits that he is biased for or against the defendant. *Anderson v. State*, 633 S.W.2d 851, 854 (Tex. Crim. App. [Panel Op.] 1982). If bias or prejudice is not established as a matter of law, the trial court has discretion to determine whether it exists to such a degree that a juror is disqualified. *Id.*

Prospective jurors must be able to consider the full range of punishment for the particular statutory offense. *Cardenas v. State*, 325 S.W.3d 179, 184 (Tex. Crim. App. 2010). They must be able "to conceive both of a situation in which the minimum penalty would be appropriate and of a situation in which the maximum penalty would be appropriate." *Johnson v. State*, 982 S.W.2d 403, 405 (Tex. Crim. App.

5

1998) (quoting *Fuller v. State*, 829 S.W.2d 191, 200 (Tex. Crim. App. 1992)). And they must be able to consider "all points in between." *Cardenas*, 325 S.W.3d at 184.

We review a trial court's decision to deny a challenge for cause by looking at the entire record to determine whether there is sufficient evidence to support the ruling. *Davis v. State*, 329 S.W.3d 798, 807 (Tex. Crim. App. 2010) (citing *Feldman v. State*, 71 S.W.3d 738, 744 (Tex. Crim. App. 2002)). We afford considerable deference to the trial court's ruling because the trial judge is in the best position to evaluate a prospective juror's demeanor and responses. *Id.* A trial court's ruling on a challenge for cause may be reversed only for a clear abuse of discretion. *Id.* When the prospective juror's answers are "vacillating, unclear, or contradictory, we accord particular deference to the trial court's decision." *Id.* (citing *Gardner v. State*, 306 S.W.3d 274, 296 (Tex. Crim. App. 2009)).

## 2. Analysis

Moore contends that certain prospective jurors were challengeable for cause based on their "no" answers to the following question: "So if found guilty of aggravated sexual assault of a child under [fourteen], I could fairly consider the minimum amount of punishment of five years [in prison], 'yes' or 'no?'"[4] According

---

[4]Of the seventy prospective jurors in the venire panel, forty-four answered "no" to this question. Of those forty-four, approximately half were excused based on either the parties' agreement or a for-cause challenge on different grounds. Moore challenged the remaining twenty plus prospective jurors on the grounds that they could not consider the full range of punishment for Count One. The trial court

6

to Moore, a prospective juror's "no" answer to this question established that he could not consider the full range of punishment for Count One. But because this question was not properly phrased, it did not lay a proper foundation to establish that a prospective juror was challengeable for cause.[5]

In *Cardenas*, the Court of Criminal Appeals clarified that although no magic language is required to support a challenge for cause, a proper foundation question to establish a for-cause challenge based on a prospective juror's inability to consider the full range of punishment should address whether the prospective juror could consider the minimum punishment "under any facts at all" or "if the facts justify it." *See* 325 S.W.3d at 187–88. In that case, the court held that defense counsel had laid the proper foundation by asking prospective jurors whether they "[c]ould . . . honestly *ever* fairly consider on an aggravated sexual assault of a child as little as five years in prison and give probation as an appropriate punishment[?]" *Id.* at 181 (emphasis added); *see id.* at 187–89. Important to the court's holding that a negative answer to this question rendered prospective jurors challengeable for cause was the inclusion of the word "ever," which, as the court pointed out, plainly means "under any facts at all" and "would certainly encompass 'if the facts justify it.'" *See id.* at 188.

denied those challenges and repeatedly explained that Moore's foundation question had not been properly phrased.

[5]Even though the trial court repeatedly stated that Moore's foundation question had not been phrased properly, *see supra* note 4, Moore did not request an opportunity to ask the venire panel additional questions.

Here, Moore's question did not include the word "ever" or any other language making clear to the prospective jurors that he was asking whether they could consider the minimum punishment "under any facts at all" or "if the facts justify it."[6] Thus, it did not lay a proper foundation. *See id.* at 187–88. And because Moore did not lay a proper predicate to establish a for-cause challenge based on the prospective jurors' inability to consider the entire range of punishment, the trial court did not abuse its discretion by overruling the challenges in question.

We overrule Moore's first issue.

## B. Relevance Objections

In his second issue, Moore contends that the trial court abused its discretion by overruling his relevance objections to two witnesses' testimony regarding the general patterns and characteristics that they had observed in the behavior of child-sexual-abuse victims. We disagree.

---

[6]The prospective jurors' confusion regarding exactly what Moore's foundation question was asking is evidenced by their earlier responses to a punishment-range question asked during the State's voir dire. When the State asked, "Is there anyone here who says '. . . I cannot consider anywhere between five to [ninety-nine] for any reason whatsoever'? . . . Is there anyone here that says, 'I cannot consider five years to [ninety-nine] or life'?" none of the prospective jurors indicated that they were unable to consider the full punishment range. The prospective jurors' responses to these questions posed by the State support the trial court's denial of Moore's for-cause challenges, a ruling to which we must afford great deference. *See Davis*, 329 S.W.3d at 807; *see also Mooney v. State*, 817 S.W.2d 693, 701 (Tex. Crim. App. 1991).

### 1. Standard of Review

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990). We will not reverse a trial court's decision to admit or exclude evidence unless the record shows a clear abuse of discretion. *Zuliani*, 97 S.W.3d at 595. An abuse of discretion occurs only when the trial court's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Id.*

Even if a trial court improperly admits evidence, such an error generally does not warrant reversal unless it affects an appellant's substantial rights. *See* Tex. R. App. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010). Improperly admitted evidence that did not influence the jury or had but a slight effect on the verdict is harmless. *Id.* Further, a trial court's error in improperly admitting evidence may be rendered harmless if other evidence that proves the same facts as the inadmissible evidence is admitted without objection. *See Valle v. State*, 109 S.W.3d 500, 509–10 (Tex. Crim. App. 2003).

### 2. Moore's Objections

Moore argues that the trial court abused its discretion by overruling his relevance objections to certain testimony from police detective Adam Smead and CPS investigator Donovan Boswell.

During the State's direct examination of Detective Smead, the prosecutor asked him about patterns of behavior that he had seen in child victims when disclosing abuse. The exchange went as follows:

Q. Defense counsel mentioned that in the initial report, [S.M.] doesn't say that her clothes were taken off, right?

A. Right.

Q. Okay. And so does she describe fighting to keep her clothes on as her father is trying to pull them off?

A. Yeah. She talked about stuff like that . . . .

Q. In your experience, is it often difficult for children to make the -- is it easy for children . . . to describe that something almost happened, but hard for them to say it actually happened?

A. Sure.

. . . .

Q. [BY THE STATE] How often have you seen situations where a child initially says that the person who sexually assaulted them tried to or attempted to do something?

[DEFENSE COUNSEL]: Objection. Relevance to this case.

THE COURT: Overruled.

Go ahead.

Q. [BY THE STATE] How often have you seen that occur?

A. I couldn't put a number to it, but I've seen it.

Q. Few or many occasions? More than once?

A. Yes.

Q. More than twice?

A. Yeah.

Q. It's not unusual, is it?

A. No.

Q. Per your investigation, is that how this started with [S.M.] in this investigation?

A. Yeah.

Q. She talked -- she talked about her dad trying to take her clothes off, right?

A. Right.

Q. Did she -- do you recall hearing her talk about how he tried to put his exposed penis on her or in her?

A. Uh-huh.

Q. Is that a "yes"?

A. On her, yes.

Q. On her.

Later, CPS investigator Boswell testified regarding the process of S.M.'s outcry and explained how her outcries became more detailed over the course of the investigation. During the State's redirect, she explained that it is often hard for children to talk about sexual abuse. In pertinent part, she testified as follows:

Q. Now, is it hard for children to talk about sexual abuse?

A. Yes.

Q. You've been doing this for roughly about 10 years; is that correct?

A. Correct.

11

Q. Could you tell the jurors how hard it is, based on your training and experience, for children to talk about these type of things?

[DEFENSE COUNSEL]: Objection. Relevance to this case.

THE COURT: Overruled.

Go ahead.

A. I've just seen various different times within my 10 years, I've always worked in this unit of CPS. . . .

But depending on the age of the child, if they feel safe at home, or if they feel like they have someone that they feel safe saying something to, and they're going to be protected, that might be when they're going to say something.

But a lot of times, children go years and years, even to adulthood, and never say anything. So to me, when a child says something at that young of an age, I'm definitely going to say I'm proud of them. I mean, that's just kind of my take on it.

Q. [BY THE STATE] And based on your training, education, and experience, have you noticed that as to whether or not it's harder for children to come out or make an outcry when the abuser is a family member?

A. Oh, yes, most definitely.

After this testimony, Boswell confirmed that she had personally met with S.M., had watched S.M.'s forensic interview, and believed S.M.'s outcry.

### 3. Analysis

Evidence is relevant if it has any tendency to make a fact of consequence to the determination of the case more or less probable than it would be without the evidence. Tex. R. Evid. 401. In cases involving the sexual abuse of a child, "[e]xpert testimony explaining that a child exhibits behavioral characteristics consistent with

12

those commonly observed among sexually abused children is relevant and admissible." *Frazier v. State*, No. 02-21-00115-CR, 2022 WL 5240393, at \*5 (Tex. App.—Fort Worth Oct. 6, 2022, pet. ref'd) (mem. op., not designated for publication) (first citing *Cohn v. State*, 849 S.W.2d 817, 819 (Tex. Crim. App. 1993); and then citing *Shaw v. State*, 329 S.W.3d 645, 651 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd)); *see Adamick v. State*, No. 09-17-00108-CR, 2019 WL 942871, at \*7 (Tex. App.—Beaumont Feb. 27, 2019, pet. ref'd) (mem. op., not designated for publication) (holding that expert's testimony regarding reasons for delayed disclosure of sexual abuse was relevant in case involving allegation of continuous sexual abuse of a child); *Reyes v. State*, 274 S.W.3d 724, 729 (Tex. App.—San Antonio 2008, pet. ref'd) (recognizing that expert testimony that a child exhibits behavioral characteristics shown among other abused children is relevant when tied to the pertinent facts of the case). Similarly, lay witness testimony regarding the behavior of abuse victims that is based on the witness's personal knowledge and experience is often helpful in determining fact issues related to the actions of child-sexual-abuse victims—and is therefore relevant. *See Roberson v. State*, 100 S.W.3d 36, 39 (Tex. App.—Waco 2002, pet. ref'd) (holding that police officer's testimony regarding the behavior of sexual-assault victims was "helpful in determining the fact issue regarding whether or not sexual[-]abuse victims commonly withhold information until they better trust law enforcement"); *cf. Zaff v. State*, No. 02-23-00320-CR, 2024 WL 3714996, at \*5 (Tex. App.—Fort Worth Aug. 8, 2024, pet. ref'd) (mem. op., not designated for publication)

13

(holding that police detective "could testify as a lay witness that delayed reporting, a lack of visible injuries, a private setting, and a lack of video evidence were all common in the family-violence cases he had seen").

Here, Detective Smead and Boswell both testified about their interactions with S.M. as well as the general patterns of behavior that they had seen exhibited by sexually abused children. Their testimony was tied to S.M.'s behaviors and helped to explain why her outcries became more detailed over time. *See Roberson*, 100 S.W.3d at 39. Thus, their testimony was relevant, and the trial court did not abuse its discretion by admitting it.

We overrule Moore's second issue.

## C.  Forensic Interviewer Alexis Harrison's Testimony as an Outcry Witness

In his third issue, Moore argues that the trial court erred by allowing forensic interviewer Alexis Harrison to testify as an outcry witness because she was not the first adult to whom S.M. had disclosed the abuse. According to Moore, because Harrison did not qualify as an outcry witness, her testimony regarding S.M.'s outcry statement should have been excluded as hearsay. We disagree.

### 1.  Applicable Law and Standard of Review

Article 38.072 of the Texas Code of Criminal Procedure creates a statutory exception to the general rule excluding hearsay. Tex. Code Crim. Proc. Ann. art. 38.072 § 2(b).

14

> Because it is often traumatic for children to testify in a courtroom setting, especially about sexual offenses committed against them, the Legislature enacted Article 38.072 to admit the testimony of the first adult a child confides in regarding the abuse. This witness may recite the child's out-of-court statements concerning the offense, and that testimony is substantive evidence of the crime.

*Martinez v. State*, 178 S.W.3d 806, 810–11 (Tex. Crim. App. 2005) (footnote omitted).

The proper outcry witness is the "first person, 18 years of age or older, other than the defendant, to whom the child or person with a disability made a statement about the offense or extraneous crime, wrong, or act." Tex. Code Crim. Proc. Ann. art. 38.072 § 2(a)(3). The Court of Criminal Appeals has construed the phrase "about the offense" to mean a statement that "in some discernible manner describes the alleged offense." *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990). "[T]he statement must be more than . . . a general allusion" of sexual abuse. *Id.* Thus, the proper outcry witness is not necessarily the first adult to whom the child revealed the abuse but, rather, the first adult to whom the child revealed specific details concerning the offense. *Id.*; *see also Brown v. State*, 381 S.W.3d 565, 572 (Tex. App.—Eastland 2012, no pet.) (affirming trial court's designation of forensic interviewer as outcry witness despite victim's prior disclosures of abuse to 911 dispatcher and responding police officer because the information provided to dispatcher and police officer did "not touch upon the detail required when a defendant is charged with continuous sexual abuse of a young child"); *Thomas v. State*, 309 S.W.3d 576, 579 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (affirming trial court's determination that stepmother was

15

proper outcry witness despite victim's prior report of abuse to mother because initial report to mother lacked specificity); *Sims v. State*, 12 S.W.3d 499, 500 (Tex. App.—Dallas 1999, pet. ref'd) (explaining that counselor was proper outcry witness where complainant told mother that defendant "had touched her private parts" but later told counselor how, when, and where appellant had touched her).

Trial courts have "broad discretion" when determining what witnesses qualify as outcry witnesses; therefore, appellate courts review those decisions under an abuse of discretion standard. *Garcia*, 792 S.W.2d at 92; *see Collins v. State*, No. 02-16-00146-CR, 2017 WL 119486, at *5 (Tex. App.—Fort Worth Jan. 12, 2017, pet. ref'd) (mem. op., not designated for publication); *Rodgers v. State*, 442 S.W.3d 547, 552 (Tex. App.—Dallas 2014, pet. ref'd); *see also Foreman v. State*, 995 S.W.2d 854, 859 (Tex. App.—Austin 1999, pet. ref'd) (noting that prior cases "establish the difficulty that can arise in identifying the proper outcry witness, and the broad discretion of district courts in making this determination"). Under this standard, "a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie outside 'the zone of reasonable disagreement' or is 'arbitrary or unreasonable.'" *Mendez v. State*, No. 03-19-00546-CR, 2021 WL 1148960, at *5 (Tex. App.—Austin Mar. 26, 2021, no pet.) (mem. op., not designated for publication) (first quoting *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002); and then quoting *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005)).

## 2. Analysis

Moore argues that the trial court abused its discretion by permitting Harrison to testify as an outcry witness because she "was not the first person that [S.M.] talked to" about the abuse. However, as noted, the proper outcry witness is not necessarily the first adult to whom the child revealed the abuse but, rather, the first adult to whom the child revealed specific details concerning the offense. *See Garcia*, 792 S.W.2d at 91.

Both in its Article 38.072 notice and at the Article 38.072 hearing, the State acknowledged that S.M. had told Mother, her grandmother, and Boswell about the abuse before Harrison interviewed her,[7] but it asserted that S.M.'s statements to these

---

[7]The State's Article 38.072 notice provided the following summary of what S.M. had told Mother:

> That [Moore] tried to touch her; that he touched her privates. That [Moore] was tickling her and threw her on the bed and tried to pull her pants down and touched her. That the first time he did it, he told her not to tell and that he has done it 2 times.

It summarized what S.M. had told grandmother as follows:

> That [Moore] took her into the bedroom . . . and pulled down her pants and tried to put his stuff in her.

It summarized S.M.'s statements to Boswell as follows:

> That [Moore] tried to touch her private part; that he pulled down her panties and . . . got his private part and tried to put it in her. She referred to her private part as a "Nooki"—the place you pee from, and the butt as the place you take a "dump" from. She states that [Moore] touched her "Nooki." She stated this happened two different times.

individuals were mere general allusions of abuse that lacked sufficient detail to constitute outcry statements. Mother's and Boswell's testimony the day before the Article 38.072 hearing supported the State's assertion that S.M.'s revelations to them had been mere general allusions of abuse.[8] Indeed, Mother testified that she had "[n]ever tr[ied] to get a lot of details from [S.M.]" about the abuse because she knew that S.M. would be interviewed by the authorities and she did not want anyone to think that she had told S.M. what to say. Similarly, Boswell explained that the purpose of her CPS screening was to ask "general questions" and that such screenings are not "detailed." Moore did not dispute the State's characterization of S.M.'s prior revelations as mere general allusions; rather, he simply argued—as he does on

---

[8]S.M.'s grandmother did not testify at the Article 38.072 hearing or at trial, but the State was not required to call witnesses at the Article 38.072 hearing. *See Denton v. State*, No. 2-05-044-CR, 2006 WL 2076534, at *8 (Tex. App.—Fort Worth July 27, 2006, pet. ref'd) (mem. op., not designated for publication) ("Appellant cites no authority, and we have found none, requiring the State to call witnesses to testify at an [A]rticle 38.072 hearing."). And its summary of what S.M. told her grandmother, *see supra* note 7, supports the State's assertion that this disclosure was merely a general allusion of abuse, *see Solis v. State*, No. 02-12-00529-CR, 2014 WL 1663405, at *5 (Tex. App.—Fort Worth Apr. 24, 2014, no pet.) (mem. op., not designated for publication) (holding that victim's statements that defendant had "raped" and "molested" her and "touched her 'private areas'" did not describe the offenses of indecency with a child or aggravated sexual assault in any discernible manner and were therefore "no more than general allusions to sexual abuse"); *Brown v. State*, 381 S.W.3d 565, 571–72 (Tex. App.—Eastland 2012, no pet.) (holding victim's statements to 911 dispatcher that "her mom made her put her hands up in her" and that "her dad put his middle part up in her" and to responding officer that "her parents 'touched her in her private areas' and that her 'dad puts his male parts inside of her'" did not provide sufficient detail to describe the offense of continuous sexual abuse of a child).

appeal—that because Harrison was not the first adult with whom S.M. spoke at all about the abuse, she was not the proper outcry witness.

On this record, the trial court could have reasonably concluded that S.M.'s prior disclosures lacked sufficient detail to qualify as outcry statements and that her true outcry was to Harrison. *See Garcia*, 792 S.W.2d at 91. Thus, we cannot conclude that the trial court abused its broad discretion by letting Harrison testify as an outcry witness. *See id.* at 92; *Venancio v. State*, Nos. 02-21-00147-CR, 02-21-00148-CR, 2022 WL 17687436, at *4 (Tex. App.—Fort Worth Dec. 15, 2022, no pet.) (mem. op., not designated for publication).

Further, even if we were to assume that the trial court abused its discretion by allowing Harrison to testify as an outcry witness, the error would be harmless. *See Nino v. State*, 223 S.W.3d 749, 754 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (explaining that error in designating an outcry witness is reversible only if it affects the appellant's substantial rights). The improper admission of an outcry witness's testimony is harmless when the victim testifies about the same instances of abuse. *Petty v. State*, No. 02-21-00130-CR, 2022 WL 4545532, at *7 (Tex. App.—Fort Worth Sept. 29, 2022, pet. ref'd) (mem. op., not designated for publication); *see Thomas v. State*, 1 S.W.3d 138, 142 (Tex. App.—Texarkana 1999, pet. ref'd) (holding that error in determining child complainant's mother was proper outcry witness and thus admitting her testimony about complainant's statements of sexual abuse by defendant under exception to hearsay rule was harmless because record was replete with testimony

19

from other witnesses concerning the victim's statements about the offense). Here, S.M. testified at length about Moore's exposing himself to her and sexually assaulting her. Because Harrison's testimony regarding the acts of abuse was cumulative of S.M.'s, any purported error in admitting it was harmless. *See Petty*, 2022 WL 4545532, at \*7; *see also Allen v. State*, 436 S.W.3d 815, 822 (Tex. App.—Texarkana 2014, pet. ref'd) (concluding that because the victim had "testified, without objection, to the same facts that were contained in her outcry," the admission of the outcry witness's testimony "[had] not influence[d] the jury's verdict or [had] had but a slight effect").

We overrule Moore's third issue.

## D. Admission of SANE Report

In his fourth issue, Moore asserts that the trial court abused its discretion by admitting State's Exhibit Three, the "Physical and Sexual Abuse Medical Protocol" report that the SANE filled out during her examination of S.M. Moore contends that the trial court abused its discretion by admitting this report under the medical-diagnosis-or-treatment exception to the hearsay rule. *See* Tex. R. Evid. 803(4). According to Moore, because the SANE exam was conducted as part of a criminal investigation, the statements made during the exam—including those reflected in the report—were not made for the purpose of medical diagnosis or treatment. We disagree.

The mere fact that a SANE exam is conducted as part of a criminal investigation "does not strip the examination of its medical purpose." *Martinez v. State*,

20

No. 01-15-00823-CR, 2016 WL 6803233, at *12 (Tex. App.—Houston [1st Dist.] Nov. 17, 2016, pet. ref'd) (mem. op., not designated for publication). Accordingly, Texas courts—including this court—have consistently held that SANE reports are admissible under Rule 803(4). *See Lumsden v. State*, 564 S.W.3d 858, 888 (Tex. App.—Fort Worth 2018, pet. ref'd) ("[W]e held that [the SANE's] testimony was admissible under the medical-diagnosis-or-treatment exception to the hearsay rule. Her handwritten report is similarly admissible under the medical-diagnosis-or-treatment exception to the hearsay rule."); *Martinez*, 2016 WL 6803233, at *11–12 (stating that Rule 803(4) may encompass medical records documenting the sexual abuse of children and upholding trial court's admission of SANE's report under medical-diagnosis-or-treatment exception to rule against hearsay); *Juarez v. State*, No. 04-15-00413-CR, 2016 WL 1359372, at *7 (Tex. App.—San Antonio Apr. 6, 2016, no pet.) (mem. op., not designated for publication) (upholding trial court's admission of SANE's report under medical-diagnosis-or-treatment exception to rule against hearsay); *Franklin v. State*, 459 S.W.3d 670, 677–78 (Tex. App.—Texarkana 2015, pet. ref'd) (same). Thus, the trial court did not abuse its discretion by admitting the SANE report under Rule 803(4).

We overrule Moore's fourth issue.[9]

---

[9]Because we overrule Moore's fourth issue on the merits, we need not address the State's argument that he failed to preserve this complaint for appeal. *See* Tex. R. App. P. 47.1; *Spencer v. State*, Nos. 02-21-00240-CR, 02-22-00006-CR,

21

**E. Denial of Moore's Request for a Mistrial**

In his fifth and sixth issues, Moore contends that the trial court abused its discretion by denying his request for a mistrial as to his guilt or innocence for Count One. According to Moore, the trial court's denial of his mistrial request violated his due process rights because the record demonstrates that the jury's guilty verdict on Count One was "apparently" not unanimous. We disagree.

**1. Standard of Review**

We review the denial of a motion for mistrial for an abuse of discretion, viewing the evidence in the light most favorable to the trial court's ruling and considering only the arguments before the court at the time of its ruling. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). We must uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Id.*

**2. Relevant Background**

The jury began its guilt–innocence deliberations at approximately 10:38 a.m. on May 24, 2023. At 2:16 p.m., the jury sent a note to the trial court stating that it had reached a guilty verdict on Count Two but it was "torn" on Count One, with one juror voting not guilty and the other eleven voting guilty. The trial court instructed the jury to continue to deliberate, and approximately two hours later, it reached a unanimous verdict finding Moore guilty of both counts. The trial court polled the

2022 WL 17173133, at *4 n.8 (Tex. App.—Fort Worth Nov. 23, 2022, no pet.) (mem. op., not designated for publication).

jury, and all twelve jurors confirmed that this was their verdict. The trial court then instructed the jurors that their verdict concluded the trial's guilt–innocence phase and that they would return the next day for the punishment phase.

The next day, following the presentation of evidence, the case was submitted to the jury for punishment deliberation at approximately 1:56 p.m. At approximately 4:30 p.m., the jury sent a note to the trial court stating: "No way we're coming to a decision on Count [One] today. Heated opinions, race, personal opinions, arguments. Can we please call it a day and resume this argument tomorrow? What happens if we can't agree?" The trial court recessed the case until 9:00 the following morning.

After resuming its deliberations the next morning, the jury sent a note to the trial court stating: "[The] [j]uror that was a hold out on convicting . . . Moore is now saying [that] she's not convinced that he did it[,] taking us back to that argument between [eleven] and [one]." The trial court instructed the jury to continue deliberating. But shortly thereafter, the jury sent another note stating that it was "unable to come to a conclusion" because "[n]o one want[ed] to concede their opinion for punishment" and that one juror was "not participating in deliberations anymore." The trial court then gave the jurors an *Allen* charge[10] and again instructed

---

[10]*See generally Allen v. United States*, 164 U.S. 492, 17 S. Ct. 154 (1896); *see also Barnett v. State*, 189 S.W.3d 272, 277 n.13 (Tex. Crim. App. 2006) ("An *Allen* charge is a supplemental charge sometimes given to a jury that declares itself deadlocked. It reminds the jury that if it is unable to reach a verdict, a mistrial will result, the case will still be pending, and there is no guarantee that a second jury would find the issue any easier to resolve.").

them to continue their deliberations. Sometime later, the jury sent yet another note stating: "No changes to decision on punishment[.] [S]till racially divided, mistrust of police and professionals. Continuing to escalate to no solution or resolution."

After these notes were read into the record, Moore asked the trial court to set aside the guilty verdict on Count One and declare a mistrial as to his guilt or innocence on that count because "[i]t d[id] not appear that the jury was ever unanimous." The trial court denied this motion. Moore then asked for a mistrial as to punishment on Count One. The trial court granted this motion and advised the parties that it would receive the jury's punishment verdict on Count Two only. After the jury announced its verdict of five years in prison on Count Two, the trial court declared a mistrial as to Count One's punishment, dismissed the jury, and sentenced Moore on Count Two in accordance with the jury's verdict.

### 3. Analysis

Moore contends that the trial court's denial of his motion for a mistrial as to his guilt or innocence on Count One violated his due process rights because the record purportedly demonstrates that the jury's guilty verdict on this count was not unanimous.[11] But, contrary to Moore's contention, the record does not show that the jury's guilty verdict on Count One was less than unanimous.

---

[11] *See Ramos v. Louisiana*, 590 U.S. 83, 93, 140 S. Ct. 1390, 1397 (2020) ("[I]f the Sixth Amendment's right to a jury trial requires a unanimous verdict to support a conviction in federal court, it requires no less in state court."); *Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005) (recognizing that "[u]nder [the Texas] constitution,

24

Article 37.05 of the Texas Code of Criminal Procedure requires a trial court to enter a guilty verdict "upon the minutes" after polling the jury if all jurors, when asked, affirm the verdict. Tex. Code Crim. Proc. Ann. art. 37.05(a). "[O]nce a jury is polled and each juror affirms his verdict, the verdict is unanimous." *Mora v. State*, No. 04-12-00495-CR, 2013 WL 5948123, at *3 (Tex. App.—San Antonio Nov. 6, 2013, pet. ref'd) (mem. op., not designated for publication) (first citing *Miranda-Canales v. State*, 368 S.W.3d 870, 875 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd); and then citing *Wood v. State*, 87 S.W.3d 735, 736 (Tex. App.—Texarkana 2002, no pet.)). A juror's subsequent expression of reservations about her verdict does not invalidate the verdict or render it less than unanimous. *See Miranda-Canales*, 368 S.W.3d at 873–76 (concluding that trial court had "acted properly" by denying appellant's motion for mistrial after juror expressed post-verdict reservations concerning guilty verdict); *Tompkins v. State*, 869 S.W.2d 637, 641 (Tex. App.—Eastland) ("The record shows that, when the jury was polled, she announced in open court that she voted 'guilty.' Her private reservations do not cancel the legal effect of her vote; consequently, there was a unanimous verdict finding appellant guilty."), *pet. dism'd, improvidently granted*, 888 S.W.2d 825 (Tex. Crim. App. 1994); *see also Wood*, 87 S.W.3d at 739–40 (recognizing that a juror may not change her verdict after it has been accepted).

jury unanimity is required in felony cases, and, under [Texas] statutes, unanimity is required in all criminal cases").

Here, the jury unanimously found Moore guilty of Counts One and Two, and when polled, each juror answered in the affirmative when asked if the guilty verdict was theirs. The mere fact that a juror expressed reservations concerning her guilty verdict during punishment deliberations did not cancel the legal effect of her vote. *See Tompkins*, 869 S.W.2d at 641; *see also Wood*, 87 S.W.3d at 739–40. Accordingly, we cannot conclude that the trial court abused its discretion by denying Moore's motion for a mistrial as to his guilt or innocence for Count One.

We overrule Moore's fifth and sixth issues.

## F. Sufficiency of the Evidence

In his seventh issue, Moore contends that the trial court erred by denying his motion for directed verdict because the State failed to prove the mens rea elements of his charged offenses. We disagree.

### 1. Applicable Law and Standard of Review

We treat an appellant's complaint that the trial court erred by denying his motion for a directed verdict of acquittal as a challenge to the legal sufficiency of the evidence. *See Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996); *Jeanty v. State*, No. 02-21-00159-CR, 2023 WL 3114342, at *4 n.6 (Tex. App.—Fort Worth Apr. 27, 2023, pet. ref'd) (mem. op., not designated for publication).

When reviewing the sufficiency of the evidence to support an essential element of a crime, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the element beyond a

reasonable doubt. *Edward v. State*, 635 S.W.3d 649, 655–56 (Tex. Crim. App. 2021); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). The crimes at issue here are aggravated sexual assault of a child and indecency with a child by exposure. A person commits aggravated sexual assault of a child by, inter alia, intentionally or knowingly[12] "caus[ing] the sexual organ of a child" who is younger than fourteen years of age "to contact or penetrate the mouth . . . of another person, including the actor." Tex. Penal Code Ann. § 22.021(a)(1)(B)(iii), (2)(B). A person commits indecency with a child by exposure if, "with intent to arouse or gratify the sexual desire of any person," he "exposes [his] anus or any part of [his] genitals, knowing the child is present." *Id.* § 21.11(a)(2)(A).

"Intent may . . . be inferred from circumstantial evidence such as acts, words, and the conduct of the appellant." *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004); *see McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. 1981) ("[T]he requisite specific intent to arouse or gratify the sexual desire of any person can be inferred from the defendant's conduct, his remarks[,] and all surrounding circumstances."). Such circumstantial evidence is just as probative as direct evidence, and the jury may draw reasonable inferences from the circumstantial evidence. *See*

---

[12]"A person acts intentionally . . . with respect to the nature of his conduct . . . when it is his conscious objective or desire to engage in the conduct . . . ." Tex. Penal Code Ann. § 6.03(a). "A person acts knowingly . . . with respect to the nature of his conduct . . . when he is aware of the nature of his conduct . . . ." *Id.* § 6.03(b).

*Winfrey v. State*, 393 S.W.3d 763, 771 (Tex. Crim. App. 2013) (distinguishing between inferences and speculation); *Hooper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007) (describing an inference as "a conclusion reached by considering other facts and deducing a logical consequence from them").

### 2. Analysis

Here, the record contains ample circumstantial evidence to support an inference that Moore acted with the requisite intent to commit both of the offenses with which he was charged. The jury heard evidence that when Moore was watching S.M. and her sister, he regularly took S.M. out to spend time alone with her and that he eventually used this separation tactic to engage in the charged acts of sexual abuse. S.M. testified[13] that Moore began tickling her on the couch but then moved her into a bedroom—a place where they could be alone even though S.M.'s sister was home at the time—to commit the acts of abuse. She further testified that Moore removed her pants and underwear and put his mouth on her genitals before moving her to an even more private location—a closet—where he took his pants off and exposed his erect penis to her.

Given the evidence that Moore used separation tactics and purposefully took S.M. to private locations to engage in the charged acts of abuse, the nature of the acts

---

[13]The testimony of a child victim alone is sufficient to support a defendant's conviction for sexual offenses. Tex. Code Crim. Proc. Ann. art. 38.07; *Perez v. State*, 562 S.W.3d 676, 689 (Tex. App.—Fort Worth 2018, pet. ref'd) (citing *Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. [Panel Op.] 1978)).

he performed, and S.M.'s uncontroverted testimony that Moore had an erection when he exposed himself to her, the jury could reasonably have found beyond a reasonable doubt that Moore intentionally or knowingly caused his mouth to contact S.M.'s sexual organ and that he exposed his genitals to her with intent to arouse or gratify his sexual desires. *See Guevara*, 152 S.W.3d at 50; *McKenzie*, 617 S.W.2d at 216; *see also Cox v. State*, No. 02-23-00307-CR, 2024 WL 3896086, at *2 (Tex. App.—Fort Worth Aug. 22, 2024, no pet.) (mem. op., not designated for publication) (noting that evidence that a defendant had an erection when exposing himself is "normally, by itself, . . . sufficient . . . to justify a jury's verdict that he intended to gratify his sexual desire"); *Rodriquez v. State*, 634 S.W.2d 48, 49 (Tex. App.—Amarillo 1982, no pet.) (holding sexual gratification element established by evidence that defendant's exposed penis was erect and he had a "big old smile on his face"). Accordingly, the evidence is legally sufficient, *see Edward*, 635 S.W.3d at 655–56; *Queeman*, 520 S.W.3d at 622, and the trial court thus did not err by denying Moore's motion for directed verdict.

We overrule Moore's seventh issue.

### III. CONCLUSION

Having overruled all of Moore's issues, we affirm the trial court's judgments.

/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  January 30, 2025